# AERO MAYFLOWER TRANSIT CO. *v.* BOARD OF RAILROAD COMMISSIONERS OF MONTANA ET AL.

No. 39.   Argued October 15, 1947.—Decided December 8, 1947.

*Edmond G. Toomey* argued the cause and filed a brief for appellant.

*Clarence Hanley,* Assistant Attorney General of Montana, argued the cause for appellees. With him on the brief were *R. V. Bottomly,* Attorney General, and *Edwin S. Booth.*

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

Again we are asked to decide whether state taxes as applied to an interstate motor carrier run afoul of the commerce clause, Art. I, § 8, of the Federal Constitution.

Two distinct Montana levies are questioned. Both are imposed by that state's Motor Carriers Act, Rev. Codes Mont. (1935) §§ 3847.1–3847.28. One is a flat tax of $10 for each vehicle operated by a motor carrier over the state's highways, payable on issuance of a certificate or permit, which must be secured before operations begin, and annually thereafter. § 3847.16 (a).[1] The other is a quarterly fee of one-half of one per cent of the motor car-

---

[1] The section was enacted originally as Mont. Laws, 1931, c. 184, § 16. Textually it is as follows: "(a) In addition to all of the licenses, fees or taxes imposed upon motor vehicles in this state, and in consideration of the use of the public highways of this state, every motor carrier, as defined in this act, shall, at the time of the issuance of a certificate and annually thereafter, on or between the first day of July and the fifteenth day of July, of each calendar year, pay to the board of railroad commissioners of the state of Montana the sum of ten dollars ($10.00), for every motor vehicle operated by the carrier over or upon the public highways of this state. . . ."

In further relation to issuance of the permit, see note 5.

rier's "gross operating revenue," but with a minimum annual fee of $15 per vehicle for class C carriers, in which group appellant falls. § 3847.27.[2] Each tax is declared expressly to be laid "in consideration of the use of the highways of this state" and to be "in addition to all other licenses, fees and taxes imposed upon motor vehicles in this state . . . ."

Prior to July 1, 1941, the fees collected pursuant to §§ 3847.16 (a) and 3847.27 were paid into the state treasury and credited to "the motor carrier fund." [3] After that date, by virtue of Mont. Laws, 1941, c. 14, § 2, they were allocated to the state's general fund.

Appellant is a Kentucky corporation, with its principal offices in Indianapolis, Indiana. Its business is exclusively interstate. It consists in transporting household

---

[2] This section originally was Mont. Laws, 1935, c. 100, § 2. It reads as follows: "In addition to all other licenses, fees and taxes imposed upon motor vehicles in this state and in consideration of the use of the highways of this state, every motor carrier holding a certificate of public convenience and necessity issued by the public service commission, shall between the first and fifteenth days of January, April, July and October of each year, file with the public service commission a statement showing the gross operating revenue of such carrier for the preceding three months of operation, or portion thereof, and shall pay to the board a fee of one-half of one per cent of the amount of such gross operating revenue; provided, however, that the minimum annual fee which shall be paid by each class A and class B carrier for each vehicle registered and/or operated under the provisions of the motor carrier act shall be thirty dollars ($30.00) and the minimum annual fee which shall be paid by each class C carrier for each vehicle registered and/or operated under the motor carrier act shall be fifteen dollars ($15.00)."

Section 3847.2, Rev. Codes Mont. (1935), contains the definitions of the three classes of carriers.

[3] The moneys in the motor carrier fund were subject to appropriation for use in supervision and regulation of many activities other than those connected with the public highways. See Rev. Codes Mont. (1935), §§ 3847.17, 3847.28; and cf. note 13.

goods and office furniture from points in one state to destinations in another. Appellant does no intrastate business in Montana. The volume of its interstate business there is continuous and substantial, not merely casual or occasional.[4] It holds a certificate of convenience and necessity issued by the Interstate Commerce Commission, pursuant to which its business in Montana and elsewhere is conducted.

In 1935 appellant received a class C permit to operate over Montana highways, as required by state law.[5] Until 1937, apparently, it complied with Montana requirements, including the payment of registration and license plate fees for its vehicles operating in Montana and of the 5¢ per gallon tax on gasoline purchased there.[6] However, in 1937 and thereafter appellant refused to pay the flat $10 fee imposed by § 3847.16 (a) and the $15 minimum "gross revenue" tax laid by § 3847.27. In consequence, after hearing on order to show cause, the appellee

---

[4] Appellant's answer and cross-complaint set forth statistics concerning its use of Montana highways during the years 1937, 1938 and 1939. The figures show appellant's equipment operating on Montana highways during 227 days in 1937; 385 trucking days in 1938; and 405 trucking days in 1939. See also note 6.

[5] The statute was Mont. Laws, 1931, c. 184, § 23, now Rev. Codes Mont. (1935), § 3847.23. The section applied the act of which it was a part to interstate and foreign commerce "insofar as such application may be permitted under the provisions of" the Federal Constitution, treaties and acts of Congress, but expressly exempted interstate carriers from making "any showing of public convenience and necessity" in order to secure the certificate or permit.

[6] These taxes were imposed separately from the two involved in this case. Appellant's brief states the registration and license plate fees increased from $660.50 in 1937 to $1,212.50 in 1938 and to $1,630.50 in 1939. The gasoline tax increased from $745.30 in 1937 to $1,257.90 in 1938 and $1,649.98 in 1939. The gallonage tax, though ultimately borne by the consumer, was laid on the sale and collected from the dealer.

board[7] in 1939 revoked the 1935 permit and brought this suit in a state court to enjoin appellant from further operations in Montana.

Upon appellant's cross-complaint, the trial court issued an order restraining the board from enforcing the "gross revenue" tax laid by § 3847.27. But at the same time it enjoined appellant from operating in Montana until it paid the fees imposed by § 3847.16 (a). On appeal the state supreme court held both taxes applicable to interstate as well as intrastate motor carriers and construed the term "gross operating revenue" in § 3847.27 to mean "gross revenue derived from operations in Montana."[8] It then sustained both taxes as against appellant's constitutional objections, state and federal. Accordingly, it reversed the trial court's judgment insofar as the "gross revenue" tax had been held invalid, but affirmed the decision relating to the flat $10 tax. 119 Mont. 118, 172 P. 2d 452.

We put aside at the start appellant's suggestion that the Supreme Court of Montana has misconstrued the state statutes and therefore that we should consider them, for purposes of our limited function, according to appellant's view of their literal import. The rule is too well settled to permit of question that this Court not only accepts but is bound by the construction given to

---

[7] It should be noted that "the board of railroad commissioners," as used in § 3847.16 (a), and "the public service commission," as used in § 3847.27, designate a single body, invested with regulatory power over various public utilities in addition to motor carriers, e. g., railroads, common carriers of oil, etc. By Rev. Codes Mont. (1935), § 3880, "The board of railroad commissioners . . . shall be ex-officio the public service commission hereby created . . . ." The two terms were said by the Montana Supreme Court in this case to be "used interchangeably." 119 Mont. 118, 136, 172 P. 2d 452, 461.

[8] This judicial construction was embodied in an amendment to the section made by Mont. Laws, 1947, c. 73, § 2.

state statutes by the state courts.[9] Accordingly, we accept the state court's rulings, insofar as they are material, that the two sections apply alike to interstate and intrastate commerce and that "gross operating revenue" as employed in § 3847.27 comprehends only such revenue derived from appellant's operations within Montana, not outside that state.[10]

Moreover, since Montana has not demanded or sought to enforce payment by appellant of more than the flat $15 minimum fee for class C carriers under § 3847.27,[11] we limit our consideration of the so-called "gross revenue" tax to that fee. This too is in accordance with the state supreme court's declaration: "Even if it be admitted

[9] *Louisiana ex rel. Francis* v. *Resweber,* 329 U. S. 459; *Huddleston* v. *Dwyer,* 322 U. S. 232; *Minnesota* v. *Probate Court,* 309 U. S. 270; *Morehead* v. *N. Y. ex rel. Tipaldo,* 298 U. S. 587; cf. *Erie R. Co.* v. *Tompkins,* 304 U. S. 64.

[10] Acting not only in the view that statutes are presumptively constitutional and, if necessary, are to be so construed as to make them so, the court noted that § 3847.16 (b) expressly provides that, when service "is rendered partly in this state and partly in an adjoining state or foreign country," carriers "shall comply with *the provisions of this act*" concerning "payment of compensation" and making reports by showing "the total business performed *within the limits of this state.*" (Emphasis added.) Accordingly it held that §§ 3847.27 and 3847.16 should be read together and the limitation of § 3847.16 (b) "within the limits of this state" thus became a part of § 3847.27 as well as § 3847.16 (a). 119 Mont. 118, 134, 172 P. 2d 452, 460.

[11] Appellant's vice president and general manager, Wheating, testified that for purposes of applying § 3847.27 he had calculated, for each of the years 1939 through 1942, "the [gross] income for that operation of the load miles operated *in Montana* by using an average income per mile figure based upon the probable load factor we would have had in Montana." (Emphasis added.) On this basis the amount of the tax as calculated at one-half of one per cent quarterly was substantially below the statutory minimum for each of the four years. See note 19. These figures apparently were reported to and accepted by the board as the basis for its demands upon the taxpayer for the flat $15 minimum annual tax.

that the manner of arriving at a sound basis upon which the tax on gross revenue [should be calculated] is not provided by the statute, a contention to which we do not agree, no difficulty would arise in putting into effect the minimum fee of $15.00 required for each company vehicle operated within the state." [12]   Although the state court did not concede that the statute comprehended no workable or sound basis for calculating the tax above the minimum, we take this statement as a clear declaration that it would sustain the minimum charge even if for some reason the amount of the tax above the minimum would have to fall.

With the issues thus narrowed, we have, in effect, two flat taxes, one for $10, the other for $15, payable annually upon each vehicle operated on Montana highways in the course of appellant's business, with each tax expressly declared to be in addition to all others and to be imposed "in consideration of the use of the highways of this state."

Neither exaction discriminates against interstate commerce.   Each applies alike to local and interstate operations.   Neither undertakes to tax traffic or movements

---

[12] 119 Mont. 118, 134, 172 P. 2d 452, 460.   Appellant had argued, as it does here, that even if the "gross revenue" tax is limited to revenue derived from operations in Montana, it is nevertheless invalid for want of any prescribed method on the face of the statute for ascertaining or calculating the tax.   The state court held that the statute by necessary implication authorized the board to "adopt any fair and reasonable mode of enforcement designed to effectuate the purposes of the Act."   119 Mont. 118, 135, 172 P. 2d 452, 461.   In view of our limitation of the question before us, as stated in the text, we need not express opinion concerning this ruling or any tax above the minimum calculated in accordance with it.   Cf. note 11.

In another connection the state supreme court adverted to the separability clause contained in § 3847.24 of the statute, though not referring to it expressly in relation to the statement quoted in the text.

taking place outside Montana or the gross returns from such movements or to use such returns as a measure of the amount of the tax.   Both levies apply exclusively to operations wholly within the state or the proceeds of such operations, although those operations are interstate in character.

Moreover, it is not material to the validity of either tax that the state also imposes and collects the vehicle registration and license fee and the gallonage tax on gasoline purchased in Montana.   The validity of those taxes neither is questioned nor well could be.   *Hendrick* v. *Maryland,* 235 U. S. 610; *Aero Transit Co.* v. *Georgia Comm'n,* 295 U. S. 285; *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506; *Edelman* v. *Boeing Air Transp.,* 289 U. S. 249. Nor does their exaction have any significant relationship to the imposition of the taxes now in question.   *Dixie Ohio Co.* v. *Comm'n,* 306 U. S. 72, 78; *Interstate Busses Corp.* v. *Blodgett,* 276 U. S. 245, 251.   They are imposed for distinct purposes and the proceeds, as appellant concedes, are devoted to different uses, namely, the policing of motor traffic and the maintenance of the state's highways.[13]

Concededly the proceeds of the two taxes presently involved are not allocated to those objects.[14]   Rather they now go into the state's general fund, subject to appropriation for general state purposes.[15]   Indeed this fact, in appellant's view, is the vice of the statute.   But in that

---

[13] See note 6 and text.   It is admitted by the pleadings that the proceeds of the vehicle registration and license tax and the gallonage tax are allocated to the construction, repair and maintenance of state highways.

[14] The board concedes in the brief filed here that the state supreme court was in error in the statement that the revenue from the two taxes presently in issue "is devoted to the building, repairing and policing of such highways . . . ."   119 Mont. 118, 138, 172 P. 2d 452, 462.

[15] See note 3 and text.

view appellant misconceives the nature and legal effect of the exactions. It is far too late to question that a state, consistently with the commerce clause, may lay upon motor vehicles engaged exclusively in interstate commerce, or upon those who own and so operate them, a fair and reasonable nondiscriminatory tax as compensation for the use of its highways. *Hendrick* v. *Maryland, supra; Clark* v. *Poor,* 274 U. S. 554; *Aero Transit Co.* v. *Georgia Comm'n, supra; Morf* v. *Bingaman,* 298 U. S. 407; *Dixie Ohio Co.* v. *Comm'n, supra; Clark* v. *Paul Gray, Inc.,* 306 U. S. 583; cf. *S. C. Hwy. Dept.* v. *Barnwell Bros.,* 303 U. S. 177. Moreover "common carriers for hire, who make the highways their place of business, may properly be charged an extra tax for such use." *Clark* v. *Poor, supra* at 557.

The present taxes on their face are exacted "in consideration of the use of the highways of this state," that is, they are laid for the privilege of using those highways. And the aggregate amount of the two taxes taken together is less than the amount of similar taxes this Court has heretofore sustained. Cf. *Dixie Ohio Co.* v. *Comm'n, supra; Aero Transit Co.* v. *Georgia Comm'n, supra.* The state builds the highways and owns them.[16] Motor carriers for hire, and particularly truckers of heavy goods, like appellant, make especially arduous use of roadways, entailing wear and tear much beyond that resulting from general indiscriminate public use. *Morf* v. *Bingaman, supra* at 411. Although the state may not discriminate against or exclude such interstate traffic generally in the use of its highways, this does not mean that the state is required to furnish those facilities to it free of charge or indeed on equal terms with other traffic not inflicting similar destructive effects. Cf. *Clark* v. *Poor, supra; Morf* v. *Bingaman, supra* at 411. Interstate traffic equally with

---

[16] It is immaterial that the state receives federal aid for state road construction, a fact on which appellant places some emphasis.

504

intrastate may be required to pay a fair share of the cost and maintenance reasonably related to the use made of the highways.

This does not mean, as appellant seems to assume, that the proceeds of all taxes levied for the privilege of using the highways must be allocated directly and exclusively to maintaining them. *Clark* v. *Poor, supra* at 557; *Morf* v. *Bingaman, supra* at 412. That is true, although this Court has held invalid, as forbidden by the commerce clause, certain state taxes on interstate motor carriers because laid "not as compensation for the use of the highways but for the privilege of doing the interstate bus business." *Interstate Transit, Inc.* v. *Lindsey,* 283 U. S. 183, 186; cf. *McCarroll* v. *Dixie Lines,* 309 U. S. 176, 179. Those cases did not hold that all state exactions for the privilege of using the state's highways are valid only if their proceeds are required to go directly and exclusively for highway maintenance, policing and administration. Both before and after the *Interstate Transit* decision this Court has sustained state taxes expressly laid on the privilege of using the highways, as applied to interstate motor carriers, declaring in each instance that it is immaterial whether the proceeds are allocated to highway uses or others. *Clark* v. *Poor, supra* at 557; *Morf* v. *Bingaman, supra* at 412.[17]

Appellant therefore confuses a tax "assessed for a proper purpose and . . . not objectionable in amount," *Clark* v. *Poor, supra* at 557, that is, a tax affirmatively laid for the privilege of using the state's highways, with a tax not imposed on that privilege but upon some other such as the privilege of doing the interstate business. Though necessarily related, in view of the nature of interstate motor traffic, the two privileges are not identical, and it is useless to confuse them or to confound a tax for the priv-

---

[17] See note 18 *infra* and text.

ilege of using the highways with one the proceeds of which are necessarily devoted to maintaining them. Whether the proceeds of a tax are used or required to be used for highway maintenance "may be of significance," as the Court has said, "when the point is otherwise in doubt, to show that the fee is in fact laid for that purpose and is thus a charge for the privilege of using the highways. *Interstate Transit, Inc.* v. *Lindsey, supra.* But where the manner of the levy, like that prescribed by the present statute, definitely identifies it as a fee charged for the grant of the privilege, it is immaterial whether the state places the fees collected in the pocket out of which it pays highway maintenance charges or in some other." *Morf* v. *Bingaman, supra* at 412.[18]

The exactions in the present case fall clearly within the rule of *Morf* v. *Bingaman* and its predecessors in authority, and therefore, like that case, outside the decisions in the *Interstate Transit* and like cases. Both taxes are levied "in consideration of the use of the highways of this state," that is, as compensation for their use, and bear only on the privilege of using them, not on the privilege of doing the interstate business. Moreover, the flat $10 fee laid by § 3847.16 (a) is further identified as one on the privilege of use by the fact that "unlike the general tax in *Interstate Transit, Inc.* v. *Lindsey,* 283 U. S. 183, the levy of which was unrelated to the use of the highways, grant of the privilege of their use is by the present statute made conditional upon payment of the fee." *Morf* v. *Bingaman, supra* at 410.

The minimum so-called "gross revenue" fee, on the other hand, is technically conditioned on the receipt of

---

[18] In *Clark* v. *Poor,* the Court stated: "Since the tax is assessed for a proper purpose and is not objectionable in amount, the use to which the proceeds are put is not a matter which concerns the plaintiffs." 274 U. S. 554, 557.

such revenue from the operations within Montana. But the flat minimum of $15 annually, which is all we have before us in the shape the case has taken for the purposes of decision here, has none of the alleged vices characteristic of gross income taxes heretofore held to vitiate such taxes laid by the states on interstate commerce. And appellant has advanced no tenable basis in rebuttal of the legislative declaration that this tax too is exacted in consideration of the use of the state's highways, *i. e.,* for the privilege of using them, not for that of doing the interstate business. Here, as in *Morf* v. *Bingaman,* "there is ample support for a legislative determination that the peculiar character of this traffic involves a special type of use of the highways," with enhanced wear, tear and hazards laying heavier burdens on the state for maintenance and policing than other types of traffic create. 298 U. S. 407, 411. It is to compensate for these burdens that the taxes are imposed, and appellant has not sustained its burden, *Clark* v. *Paul Gray, Inc., supra* at 599, and authorities cited, of showing that the levies have no reasonable relation to that end.[19]

It is of no consequence that the state has seen fit to lay two exactions, substantially identical, rather than combine them into one, or that appellant pays other taxes

---

[19] Appellant claims that the $15 minimum fee is unreasonable since it is roughly ten times greater than the tax that would be required if the percentage standard provided in the statute were applied. To accept appellant's position would mean that a state could never impose a minimum fee, but would have to adjust its taxes to the inevitable variations in the use of the highways made by various carriers. The Federal Constitution does not require the state to elaborate a system of motor vehicle taxation which will reflect with exact precision every gradation in use. In return for the $15 fee appellant can do business grossing $3,000 per vehicle annually for operations on Montana roads. Appellant was not wronged by its failure to make the full use of the highways permitted. *Aero Transit Co.* v. *Georgia Comm'n,* 295 U. S. 285; *Morf* v. *Bingaman,* 298 U. S. 407; cf. *Kane* v. *New Jersey,* 242 U. S. 160.

which in fact are devoted to highway maintenance. For the state does not exceed its constitutional powers by imposing more than one form of tax. *Interstate Busses Corp.* v. *Blodgett, supra; Dixie Ohio Co.* v. *Comm'n, supra.* And, as we have said, the aggregate amount of both taxes combined is less than that of taxes heretofore sustained. In view of these facts there is not even semblance of substance to appellant's contention that the taxes are excessive.

Neither is there merit in its other arguments, which we have considered, including those urging due process and equal protection grounds for invalidating the levies.

The judgment of the Supreme Court of Montana is

*Affirmed.*