**Appellate Department, Superior Court, San Diego**

[Crim. A. No. 161612.   Dec. 14, 1950.]

THE PEOPLE, Respondent, v. NORMAN H. BUCK, Appellant.

THE PEOPLE, Respondent, v. MIGUEL R. GUERRA, Appellant.

THE PEOPLE, Respondent, v. LOUIS C. YOUNGREN, Appellant.

Manuel Ruiz, Jr., for Appellants.

James Don Keller, District Attorney, and Duane J. Carnes, Deputy District Attorney, for Respondent.

BURCH, J.—The defendants were convicted of a violation of section 9 of San Diego County Ordinance No. 464 (N.S.) as amended by Ordinance No. 609 (N.S.), which provides that "it shall be unlawful for any person to drive or to be in actual physical control of any taxicab in the unincorporated areas of the County of San Diego without first obtaining a permit in writing so to do from the Sheriff of the County of San Diego." It then requires the payment of a $1.00 fee annually; and examination by the sheriff as to the applicant's knowledge of the provisions of the ordinance; knowledge of the Vehicle Code, traffic regulations and geography of the county; and that the sheriff may grant or deny the permit or may revoke the same if he finds the person holding any such permit to be of bad moral character or convicted of an offense involving moral turpitude. Provision is made that

if the permit is refused or revoked by the sheriff the applicant may appeal to the board of supervisors for a hearing thereon.

According to the agreed statement of facts, the defendants were arrested while driving taxicabs on the highways in unincorporated territory in San Diego County. The defendants were not stopping to pick up or discharge passengers, using the highways only as a means of transporting passengers for hire from the Republic of Mexico, on their way to a destination outside of the unincorporated areas of the county of San Diego. This was their usual course of business. When not in use the taxicabs were stationed in Tijuana, Republic of Mexico, and all passenger service originated there. The defendants are American citizens.

Each of the defendants had applied for and been denied the license required by the ordinance in question. One only of the defendants appealed from the sheriff's decision to the board of supervisors, but his appeal was denied. No one of the defendants has sought in the courts a review of the administrative action. Instead they contend that the ordinance, as applied to them, contravenes the commerce clause of the federal Constitution (Art. I, § 8), and is therefore void.

Since the Constitution and laws of Congress are the supreme laws of the land, we will have to decide whether the ordinance is valid as tested by the commerce clause and acts of Congress thereunder. In this connection, it has been held that neither a tax measure nor a police regulation by local authority may unduly burden nor be discriminatory as to the commerce clause. Our concern here is with a police regulation.

■ The defendants were engaged in foreign commerce. (*Bob-Lo Excursion Co.* v. *Michigan*, 333 U.S. 28 [68 S.Ct. 358, 92 L.Ed. 455].) ■ The ordinance is an exercise of the state's police power properly delegated by the Legislature of the state to the board of supervisors of the county. (*In re Martinez*, 22 Cal.2d 259 [138 P.2d 10].) ■ The federal power over commerce (U.S. Const., art. I, § 8, cl. 3) is supreme (U.S. Const., art. VI, § 1, cl. 2). The distribution of power between the state and federal system in regard to commerce belongs to Congress. (*Panhandle Eastern Pipe Line Co.* v. *Public Service Commission*, 332 U.S. 507 [68 S.Ct. 190, 92 L.Ed. 128].) In the event of conflict in that field the local law must give way to the supremacy of the federal law. (*Francis* v. *Southern Pacific Co.*, 333 U.S. 445 [68 S.Ct. 611,

92 L.Ed. 798].) This is true whether the local law be under the taxing power or under the police power in its more conventional sense. (*Freeman* v. *Hewit*, 329 U.S. 249 [67 S.Ct. 274, 91 L.Ed. 265].) ▮ Not all burdens upon commerce but only undue or discriminatory ones are forbidden. (*Postal Telegraph Cable Co.* v. *Richmond*, 249 U.S. 252, 259 [39 S.Ct. 265, 63 L.Ed. 590] ; *Western Live Stock* v. *Bureau of Revenue*, 303 U.S. 250, 254 [58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944] ; *McGoldrick* v. *Berwind-White Coal Mining Co.*, 309 U.S. 33, 46 [60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876] ; *Nelson* v. *Sears, Roebuck & Co.*, 312 U.S. 359 [61 S.Ct. 586, 85 L.Ed. 888, 132 A.L.R. 475] ; *Nippert* v. *City of Richmond*, 327 U.S. 416, 425 [66 S.Ct. 586, 90 L.Ed. 760, 162 A.L.R. 844].) It was recognized in *California* v. *Thompson*, 313 U.S. 109 [61 S.Ct. 930, 85 L.Ed. 1219], that positive intervention by Congress was required to displace the reserve power of the state to promote safety and honesty in the business of motor carrier transportation beyond state lines. ▮ After Congress "enters the field" the state law and the state's power to enact law in the same field, stands or falls upon the intent of Congress to exercise exclusive jurisdiction, or to accept the aid of the state. (*California* v. *Zook*, 336 U.S. 725 [69 S.Ct. 841, 93 L.Ed. 1005].)

Congress entered the field of motor vehicle carriers for the first time by Act of August 9, 1935. (49 U.S.C.A. §§ 301-327.) The National Transportation Policy Act was enacted September 18, 1940, chapter 722, title I, section 15, 54 Statutes 919. One of the declared purposes of the latter act is "to cooperate with the several states and the duly authorized officials thereof." By section 303(b) of the above motor vehicle act "taxicabs, or other motor vehicles performing a bona fide taxicab service having a capacity of not more than six passengers and not operated on a regular route or between fixed termini" are excluded except "It shall be the duty of the commission to regulate the . . . qualifications and maximum hours of service of employees, and safety of operation and equipment." In performance of this mandate the Interstate Commerce Commission has provided rules and regulations. (Code Federal Regulations, parts 190-197.) These cover general definitions, hours of service, qualifications of drivers, driving of motor vehicles, accident reports, inspection and maintenance and carrying of explosives or other dangerous articles by motor vehicles.

Our question for the purpose of decision here is narrowed to whether the ordinance conflicts or coincides with the federal law above outlined. In this respect the ordinance exacts of the defendants at the point where they complain an annual fee of $1.00 which is no more than the cost of its administration. Defendants offer no evidence to the contrary. (*Western Union Telegraph Co.* v. *Borough of New Hope,* 187 U.S. 419 [23 S.Ct. 204, 47 L.Ed. 240]; *Postal Telegraph-Cable Co.* v. *City of Richmond,* 249 U.S. 252 [39 S.Ct. 265, 63 L.Ed. 590]; *Sprout* v. *City of South Bend,* 277 U.S. 163, 169 [48 S.Ct. 502, 72 L.Ed. 833]; *Interstate Transit, Inc.* v. *Lindsey,* 283 U.S. 183 [51 S.Ct. 380, 75 L.Ed. 953]; *South Carolina State Highway Dep't* v. *Barnwell Bros. Inc.,* 303 U.S. 177 [58 S.Ct. 510, 82 L.Ed. 734]; *Aero Mayflower Transit Co.* v. *Board of Railroad Commissioners,* 332 U.S. 495 [68 S.Ct. 167, 92 L.Ed. 99].)

One attacking as unreasonably burdening commerce the validity of a regulatory or taxing measure enacted by state authority for the use of the highways, has the burden of showing a want of reasonable relation to the increased cost of maintenance and policing due to such traffic. (*Aero Mayflower Transit Co.* v. *Board of Railroad Commissioners, supra.*)

The principal requirement of the ordinance is that the carrier's operator be of good moral character. This is a reasonable requirement of police regulations. (*In re Porterfield,* 63 Cal.App.2d 518, 536 [147 P.2d 15].) There is no such specific requirement in the federal regulations, parts 190-197. Having in mind the purpose of the Act of 1940, *supra,* to cooperate with the state and its duly authorized officials, we can see no conflict here.

In *California* v. *Zook,* 336 U.S. 725 [69 S.Ct. 841, 93 L.Ed. 1005], sections 654.1, 654.3, of the California Penal Code were found not to conflict with the Federal Motor Carrier Act though the latter "has substantially the same provision." A quotation from the Zook case may be helpful: "It is difficult to believe that the I.C.C. intended to deprive itself of effective aid from local officers experienced in the kind of enforcement necessary to combat this evil—aid of particular importance in view of the I.C.C.'s small staff." (P. 737.)

The state's interest in its own highways has been recognized superior to the federal interest against "burdening" commerce in *South Carolina State Highway Dep't* v. *Barnwell Bros.,* 303 U.S. 177 [58 S.Ct. 510, 82 L.Ed. 734], (State law forbids on highways vehicles of width greater than 90 inches); *Clark* v. *Poor,* 274 U.S. 554, 557 [47 S.Ct. 702, 71 L.Ed. 1199]

(carrier required to procure a certificate and pay a tax for use of highways); *Maurer* v. *Hamilton,* 309 U.S. 598 [60 S.Ct. 726, 84 L.Ed. 969] (regulation of "size and weight"); *Hendrick* v. *State of Maryland,* 235 U.S. 610 [35 S.Ct. 140, 59 L.Ed. 385] (licensing and registration required of nonresident operator); *H. P. Welch Co.* v. *New Hampshire,* 306 U.S. 79 [59 S.Ct. 438, 83 L.Ed. 500] (state law limits hours on duty); *Aero Mayflower Transit Co.* v. *Board of Railroad Commissioners,* 332 U.S. 495 [68 S.Ct. 167, 92 L.Ed. 99] (annual state tax levied for use of highways).

Defendants argue that *H. P. Hood & Sons* v. *DuMond,* 336 U.S. 525 [69 S.Ct. 657, 93 L.Ed. 865], marks a departure from earlier decisions in interpreting the effect of local police regulations upon the federal commerce clause. The court stated quite to the contrary: "New York's regulations . . . have been complied with. It is only additional restrictions, imposed for the avowed purpose and with the practical effect of curtailing the volume of interstate commerce, to aid local economic interests, that are in question here."

Defendants contend that what San Diego County may do, every county and municipality in the state may do. The force of the argument in a proper case was recognized in *Nippert* v. *City of Richmond,* 327 U.S. 416, 425 [66 S.Ct. 586, 90 L.Ed. 760, 162 A.L.R. 844]. The record does not disclose that defendants are required by any other political division than San Diego County to evidence their fitness to operate taxicabs on the state's highways.

A peculiar situation of San Diego County in relation to taxicab passenger traffic across the border from Mexico would seem to put the county in a position to exercise such control over this traffic as might ordinarily be exercised by the state Legislature since taxicab control is delegated by the state to the county. (See *Bob-Lo Excursion Co.* v. *Michigan, supra.*)

We are of the opinion that the ordinance's requirement of examination to show good moral character of taxicab operators does not conflict with the Federal Motor Carrier Act, nor does it coincide with any regulation of the Interstate Commerce Commission (Code Federal Regulations, parts 190-197). The ordinance, moreover, in the respect mentioned, is not in conflict with the National Transportation Policy Act of 1940.

The judgments are affirmed.

Turrentine, P. J., and Glen, J., concurred.