Shirks Motor Express Corporation, Appellant, *v.*
Messner.

452

Argued April 20, 1953. Before Stern, C. J., Stearne, Jones, Bell, Chidsey and Musmanno, JJ.

*Frank A. Sinon*, with him *Rhoads, Sinon & Reader*, *John R. Norris, Baldwin, Jarman & Norris*, *George S. Norcross* and *Warner, Norcross & Judd*, for appellants.

*Harry F. Stambaugh*, Special Counsel, with him *Robert E. Woodside*, Attorney General, for appellees.

Opinion by Mr. Justice Chidsey, November 17, 1953:

The appellants, Shirks Motor Express Corporation and Interstate Motor Freight System, Inc., filed sep-

arate bills in equity against the Secretary of Revenue and the Auditor General of the Commonwealth of Pennsylvania to enjoin them from enforcing the Act of June 22, 1931, P. L. 694, as amended by the Act of December 27, 1951, P. L. 1761, 72 PS §2185 et seq., which imposes an excise tax on the gross receipts of common carriers by motor vehicle, on the ground that the Act, as amended, violates the Commerce Clause, the Equal Protection Clause and the Due Process Clause of the United States Constitution, and also violates certain provisions of the Pennsylvania Constitution. The defendants filed preliminary objections in the nature of a demurrer, which in each case were sustained, and the respective complaints dismissed.

Shirks Motor Express Corporation is a Delaware corporation registered to do business in Pennsylvania. It is engaged in the business of transporting property by motor vehicle as a common carrier. It is engaged in interstate transportation, pursuant to certificates issued by the Interstate Commerce Commission, over various routes and between various points in seven States, including Pennsylvania. It is also engaged to a limited extent in intrastate transportation, pursuant to a certificate issued by the Pennsylvania Public Utility Commission, over certain routes within Pennsylvania.

Interstate Motor Freight System, Inc. is a Michigan corporation. It is a common carrier engaged solely in interstate transportation of property by motor vehicles, pursuant to certificates issued to it by the Interstate Commerce Commission. It operates over various routes and between various points in fifteen States, including Pennsylvania. This plaintiff's bill in equity substantially duplicates the bill of Shirks Motor Express Corporation, but also alleges that the tax is unconstitutional because it is levied upon trans-

portation over the Pennsylvania Turnpike, a State instrumentality, for which tolls are charged.

Both appellants pay to the Commonwealth taxes for liquid fuels and registration fees on their vehicles.

Appellants attack the constitutionality of the statute involved on many fronts. Their contentions may be roughly subdivided into two groups: (1) those aimed solely at the amendatory Act of 1951, and (2) those aimed at those portions of the original Act of 1931 which were not affected by the 1951 amendment.

In its original form the Act of 1931 imposed a tax of 8 mills on each dollar of the gross receipts of motor carriers as an excise for the use of the public highways. Intrastate carriers were required to pay eight mills of the gross receipts from all operations and interstate carriers were required to pay ". . . eight (8) mills upon the dollar upon such portion of the gross receipts of such company as is represented by the ratio that the number of miles of routes operated in this Commonwealth by such company, during the period for which the report is filed, bears to the total number of miles of all routes operated by such company during said period.". The original Act also provided for credits against the amount of the tax for any tax paid to a city for the use of its highways and for registration fees paid to the Commonwealth. The Act of 1931 further provided that the tax receipts collected from interstate carriers should be paid into the Motor License Fund, while tax receipts collected from intrastate carriers should be paid into the General Fund of the Commonwealth. The Act of 1951 made two changes, (1) it eliminated the credit for payment of local taxes and registration fees, and (2) it provided that *all* tax receipts be paid into the General Fund.[1]

[1] Thus tax receipts from intrastate carriers continued to be paid into the General Fund.

Appellants' first contention is that the Act of 1931, as amended, violates the Commerce Clause (Article I, Section 8) of the United States Constitution. Appellants' contention is based in part upon their construction of the above quoted portion of the statute to mean that the trucking companies are taxed upon the basis of physical location and extent of routes rather than miles operated. Such a construction is unwarranted. The title of the Act provides: "Imposing a tax on gross receipts as an excise on the *use* of the public highways by certain owners or operators of motor vehicles transporting passengers and property for hire." (Emphasis supplied). Use of the highways can be ascertained only from the number of miles operated, not from the physical layout of the routes. We adopt as correct the construction given to the statute by the Department of Revenue in administering the tax, that is, that the tax is based upon the number of miles operated, not the physical location and the extent of the routes. Cf. *Commonwealth v. Brink's, Incorporated*, 346 Pa. 296, 30 A. 2d 128.

It is well settled that a State does not have the power to tax interstate commerce as such: *Alpha Portland Cement Company v. Commonwealth of Massachusetts*, 268 U. S. 203; *Spector Motor Service, Inc. v. O'Connor, Tax Commissioner*, 340 U. S. 602. It is equally well settled that a State may, consistently with the Commerce Clause, impose upon vehicles engaged in interstate commerce a reasonable, nondiscriminatory excise tax as compensation for the use of its highways: *Dixie Ohio Express Co. v. State Revenue Commission et al.*, 306 U. S. 72; *Hendrick v. State of Maryland*, 235 U. S. 610; *Capitol Greyhound Lines et al. v. Brice, Commissioner of Motor Vehicles*, 339 U. S. 542. Both appellants and appellees concede these fundamental propositions, but disagree as to their application to the statute here involved.

Where an excise tax of such nature is imposed by a State upon carriers engaged in interstate commerce it must affirmatively appear that it is levied only as compensation for the use of its highways. This limitation upon the taxing power of a State has not been violated where the taxing statute discloses that the incidence of the tax is apportioned to the use of the State's highways *or* where the proceeds of the tax are apportioned directly or indirectly to highway purposes: *Clark et al. v. Poor et al.*, 274 U. S. 554; *Interstate Transit, Incorporated v. Lindsey, County Court Clerk*, 283 U. S. 183; *Morf v. Bingaman, Commissioner of Revenue for New Mexico*, 298 U. S. 407; *Aero Mayflower Transit Co. v. Board of Railroad Commissioners of Montana et al.*, 332 U. S. 495 (1947), and cases cited therein. This is merely another way of stating the rule previously referred to, that is, that the tax must be for the purpose of compensating the State for the use of its highways. Where the proceeds of the tax are allocated directly or indirectly for highway uses, there can be no doubt that the purpose of the tax is compensation for the use of the highways. *Where the amount of the tax is reasonable and nondiscriminatory, and apportioned so as to reflect the use of a State's highways, a State does not abdicate its right to exact compensatory taxes from vehicles engaged in interstate commerce because the proceeds of the tax are placed in a general fund, as was done in the instant case, rather than in a highway fund.* If appellants' argument were adopted, vehicles engaged in interstate commerce, which contribute largely to the depreciation of the highways, would pay only the motor fuel tax and registration fees, while similar carriers engaged in intrastate commerce, would, in addition, be subject to this excise tax. An interstate carrier may not base a constitutional objection solely upon the use made of the proceeds of the tax. This is a mat-

ter for the exclusive determination of the Legislature. If the tax is otherwise constitutional, the use to which the proceeds of the tax are allocated will not render it unconstitutional: *Morf v. Bingaman,* supra, at p. 412; *Aero Mayflower Transit Co. v. Commissioner,* supra; *Clark v. Poor,* supra; *Dixie Ohio Co. v. State Revenue Commissioner,* supra.[2] None of the cases cited by the appellants holds otherwise.

---

[2] In *Morf v. Bingaman,* 298 U. S. 407, Mr. Justice STONE said at p. 412: ". . . The use for highway maintenance of a fee collected from automobile owners may be of significance, when the point is otherwise in doubt, to show that the fee is in fact laid for that purpose and is thus a charge for the privilege of using the highways. Interstate Transit, Inc. v. Lindsey, supra. But where the manner of the levy, like that prescribed by the present statute, definitely identifies it as a fee charged for the grant of the privilege, it is immaterial whether the state places the fees collected in the pocket out of which it pays highway maintenance charges or in some other.".

In the *Aero Mayflower Transit Co.* case, 332 U. S. 495, Mr. Justice RUTLEDGE said at p. 504: ". . . Both before and after the Interstate Transit decision this Court has sustained state taxes expressly laid on the privilege of using the highways, as applied to interstate motor carriers, declaring in each instance that it is immaterial whether the proceeds are allocated to highway uses or others.".

In *Clark v. Poor,* 274 U. S. 554, Mr. Justice BRANDEIS said at p. 557: ". . . It is said that all of the tax is not used for maintenance and repair of the highways; that some of it is used for defraying the expenses of the Commission in the administration or enforcement of the Act; and some for other purposes. This, if true, is immaterial. Since the tax is assessed for a proper purpose and is not objectionable in amount, the use to which the proceeds are put is not a matter which concerns the plaintiffs.".

And in the *Dixie Ohio Co.* case, 306 U. S. 72, Mr. Justice BUTLER said at p. 77: ". . . The exaction is not to be deemed offensive to the commerce clause merely because the State, in the conduct of its fiscal affairs, chooses to use part or all of the proceeds for purposes other than the construction, improvement, or maintenance of its highways . . . .".

Under the principles above set forth it is necessary to determine whether the formula set forth in the Act of 1931, as amended by the Act of 1951, is reasonably calculated to impose the tax only on that portion of the operation of interstate carriers which is effected by the use of highways within the Commonwealth of Pennsylvania, and whether the tax is nondiscriminatory and reasonable in amount. The numerator of the tax formula is the number of miles operated in Pennsylvania. The denominator is the total number of miles operated. The multiple is the gross receipts of the carrier from all of its operations. The tax of eight mills is imposed upon the result of this calculation. The statute under consideration provides a reasonably accurate and nondiscriminatory formula to reflect the use of highways within this Commonwealth. In all of the cases cited by the appellants, either there was no formula whatever or the formula did not reflect use of the highways.

The only other question to be answered with reference to appellants' contention that the Act of 1931 as amended violates the Commerce Clause is whether the amount of the tax is reasonable. The burden of proving that the tax is unreasonable is on the carrier: *Capitol Greyhound Lines v. Brice,* supra; *Clark, Director of Department of Motor Vehicles et al. v. Paul Gray, Inc. et al.,* 306 U. S. 583, and appellants have failed to carry that burden. It is true that the effect of that portion of the 1951 amendment which eliminated the credit for payment of local taxes and registration fees was the same as an increase in the amount of the tax which theretofore, because of those credits, was something less than eight mills. We do not regard a tax of eight mills on gross receipts apportioned to activities of interstate carriers within Pennsylvania as unreasonable, particularly since it has been held

that an interstate carrier may be required to contribute toward the cost of construction of highways as well as their upkeep: *Clark v. Poor*, supra. The fact that one of the appellants or other marginal truck carriers will operate at a loss if the tax is applied, if true for that reason, does not establish that the tax is unreasonable.

None of the arguments advanced by the appellants is sufficient to show that the Act of 1931 as amended by the Act of 1951 is violative of the Commerce Clause of the United States Constitution.

Appellants also contend that the portion of the 1951 amendment which requires that the proceeds of the tax in question be placed in the General Fund violates Article IX, Section 18 of the Constitution of Pennsylvania. Article IX, Section 18, which was adopted in 1945, provides: "All proceeds from gasoline and other motor fuel excise taxes, motor vehicle registration fees and license taxes, operators' license fees and other excise taxes imposed on products used in motor transportation after providing therefrom for (a) cost of administration and collection, (b) payment of obligations incurred in the construction and reconstruction of public highways and bridges shall be appropriated . . . and used solely for . . . public highways and bridges and air navigation facilities and costs and expenses incident thereto . . . and shall not be diverted by transfer or otherwise to any other purpose, . . .". The amendment clearly and specifically enumerates the taxes intended to be covered by it and appellants recognize that a strict construction of this constitutional provision excludes a gross receipts tax on motor vehicle carriers for hire, and argue that the amendment must be construed in the light of common understanding and the form of the question which appeared on the ballot when the proposed amendment was ap-

proved by the voters. The question on the ballot was: "Shall the State Constitution be amended by adding Section eighteen to Article nine, requiring the revenues from taxes and license fees on gasoline, motor fuels, motor vehicles and operators and other products used in motor transportation, shall be used solely for highways, safety thereon, air navigation facilities, costs and expenses incident thereto; and permitting loans from such revenues to the Commonwealth only if repaid in the next fiscal year?". Appellants stress the words ". . . revenue from taxes . . . on . . . motor vehicles and operators . . .", and argue that the Act of 1931 imposed a gross receipts tax on operators of motor vehicles. But this argument proves too much and is self-defeating since the distinction between an owner's license and an operator's license is well known by almost all voters in Pennsylvania, and it can not be said that by approving the amendment as the question appeared on the ballot the voters intended by the word "operators" to include owners of motor vehicles for hire. The tax in question is clearly not a tax on motor vehicles as such, nor is it a tax on "operators" as that word is commonly understood.

Appellants further contend that the tax in question violates the Equal Protection Clause of the United States Constitution, and the Uniformity Clause of the Pennsylvania Constitution. This contention is based in part upon appellants' erroneous construction of the statute which has been previously referred to and which requires no additional comment, and also upon the fact that the tax is applied to gross receipts arising from use of the Pennsylvania Turnpike for which a compensatory toll is also charged. Appellants argue that a carrier who uses the Turnpike for a given number of miles of its operation must pay a toll in addition to the tax, whereas another carrier

who operates for an equal number of miles but does not use the Turnpike pays only the tax, and therefore there is lack of uniformity in the operation of the tax. The Turnpike Commission holds the legal title to the Turnpike, but only in its capacity as an instrumentality of the Commonwealth: Act of May 21, 1937, P. L. 774, Section 4, 36 PS §652d. The Turnpike is one of the public highways which cross the State of Pennsylvania in the same general locality. Two others are the William Penn Highway and the Lincoln Highway. No motor carrier is restricted to the use of the Turnpike to the exclusion of either of such other two routes. If a motor carrier voluntarily chooses to use the Turnpike because of more economic and efficient operation, such voluntary choice can not provide the foundation for a constitutional argument. The choice is obviously made because the amount of the toll is less than savings in operations resulting from a shorter route, few and very slight grades which make it possible to carry loads up to the legal limit, absence of intersections and savings in fuel and time. Appellant Interstate has not shown that the tax plus the toll exceeds fair compensation for its use of the Turnpike. A taxpayer can not voluntarily assume a burden and then be heard to say that it is unconstitutional. There is no merit in this contention.

Appellants' last contention is that the 1951 amendment violates the Fourteenth Amendment, or Due Process Clause of the United States Constitution, and Article I, Sections 1 and 9 of the Constitution of Pennsylvania, which together appellants construe to be the Pennsylvania due process requirement. This contention is based upon the retroactive effect of that portion of the 1951 amendment which had the effect of increasing the amount of the tax by eliminating the credits formerly allowed for registration fees and local

use taxes. The amendment was approved on December 27, 1951, but the Act provides that it shall be applied to gross receipts for the calendar year 1951. The taxing power of the Legislature is very broad and includes power to enact taxes which are retroactive in effect as well as the power to retroactively increase taxes. Many Pennsylvania cases have sustained the exercise of this power and the United States Supreme Court has approved retroactive taxes since *Stockdale v. The Insurance Companies,* 20 Wall. 323 (1874). In *Welch v. Henry et al.,* 305 U. S. 134, Justice STONE said at p. 148: ". . . For more than seventy-five years it has been the familiar legislative practice of Congress in the enactment of revenue laws to tax retroactively income or profits received during the year of the session in which the taxing statute is enacted, and in some instances during the year of the preceding session. See Untermyer v. Anderson, supra, footnote 1. [276 U. S. 440, 72 L. Ed. 645, 48 S. Ct. 353]. These statutes not only increased the tax burden by laying new taxes and increasing the rates of old ones or both, but they redistributed retroactively the tax burdens imposed by preexisting laws. This was notably the case with the 'Revenue Act of 1918,' enacted February 24, 1919, 40 Stat. 1057, and made applicable to the calendar year 1918, . . .".

Even though the nature and amount of the increase in the tax could not have been anticipated, the retroactive effect of the 1951 amendment does not constitute a denial of due process under either the United States or the Pennsylvania Constitution.

We have considered all of the contentions made and authorities cited by appellants, but deem further discussion unnecessary.

The decrees of the court below which dismissed the complaint in each of these two cases are affirmed at the cost of the respective appellants.

DISSENTING OPINION BY MR. JUSTICE BELL:

Can a State tax interstate commerce by pretending that the tax is imposed as compensation for the use of its highways when not one cent of the tax (receipts) is used directly or indirectly for the highways—that is the basic question. Expressed in other words, when an act wears a false face shouldn't the Courts look underneath the masquerade to see whether the hands and body are really Esau's even though the voice is Jacob's?

The lower Court sustained defendants' preliminary objections in the nature of a demurrer. Accordingly, all of the facts which are averred in the bill in equity are, for the purpose of this appeal, considered to be true and correct; but the correctness and truth of the pleaders' conclusions or averments of law are not admitted: *Narehood v. Pearson*, 374 Pa. 299, 96 A. 2d 895; *Carlin v. Pennsylvania Power & Light Co.*, 363 Pa. 543, 70 A. 2d 349.

Can a State lawfully tax carriers engaged in interstate commerce and if so, what are its powers and limitations? This question raises several constitutional questions which are so inter-related that they may be considered together.

"It long has been settled that a State cannot lay a tax on interstate commerce in any form, whether on the transportation of subjects of commerce, the receipts derived therefrom, or the occupation or business of carrying it on. Leloup v. Port of Mobile, 127 U. S. 640, 648; Kansas City Ry. Co. v. Kansas, 240 U. S. 227, 231, and cases cited :" *Ozark Pipe Line Corp. v. Monier*, 266 U. S. 555, 562. This principle has been reiterated in *Alpha Portland Cement Company v. Massachusetts*, 268 U. S. 203, 217; *Freeman v. Hewit*, 329 U. S. 249; *Joseph v. Carter & Weekes Stevedoring Co.*, 330 U. S. 422; *Spector Motor Service, Inc. v. O'Con-*

*nor,* 340 U. S. 602; *Keystone Metal Company v. City of Pittsburgh,* 374 Pa. 323, 97 A. 2d 797; *Dixie Ohio Express Co. v. State Revenue Commission,* 306 U. S. 72; *Sprout v. South Bend,* 277 U. S. 163; *Interstate Transit, Inc. v. Lindsey,* 283 U. S. 183; *Gwin et al. v. Henneford,* 305 U. S. 434; *Norfolk & Western Railroad Co. v. Pennsylvania,* 136 U. S. 114.

Expressed in another way it is well settled, as the majority admit, that a State does not have the power to tax interstate commerce as such. In *Dixie Ohio Express Co. v. State Revenue Commission,* 306 U. S., supra, the Court said (page 76) : *"It is elementary that a State may not impose a tax on the privilege of engaging in interstate commerce.\** Sprout v. South Bend, 277 U. S. 163, 171. Interstate Transit, Inc., v. Lindsey, 283 U. S. 183, 185. Gwin, White & Prince, Inc. v. Henneford, 305 U. S. 434, . . .".

However, it is now equally well settled that a state may impose a fair, reasonable and non-discriminatory tax upon carriers who use its highways for the cost, maintenance, and other proper highway expenses *as compensation for the use* of its highways even though such carrier is engaged partly or exclusively in interstate commerce: *Interstate Busses Corporation v. Blodgett,* 276 U. S. 245; *Dixie Ohio Express Co. v. State Revenue Commission,* 306 U. S. 72; *Clark v. Gray, Inc.,* 306 U. S. 583; *Capitol Greyhound Lines v. Brice,* 339 U. S. 542; *Aero Transit Co. v. Commissioners,* 332 U. S. 495; *Hendrick v. Maryland,* 235 U. S. 610.

Both the title and sec. 2 of the Act of June 22, 1931, as amended December 27, 1951, declare that the tax is an excise tax on gross receipts levied (as compensation) for the "use" of the highways. This declaration is entitled to weight, but if in reality, i.e., in its prac-

---

\* Italics throughout, ours.

tical operation and effect, the tax is not what it purports to be, the realities control: *Interstate Transit, Inc. v. Lindsey,* 283 U. S. 183; *Spector Motor Service, Inc. v. O'Connor,* 340 U. S. 602, 608; *Arrott's Estate,* 322 Pa. 367, 185 A. 697; *Armour & Co. v. Pittsburgh,* 363 Pa. 109, 69 A. 2d 405; *Murray v. Philadelphia,* 364 Pa. 157, 71 A. 2d 280.

In *Sprout v. South Bend,* 277 U. S., supra, a city tax (duly authorized by the legislature) prescribing an annual license fee (varying with the seating capacity of the bus) on all vehicles using the city streets, was declared *unconstitutional* as to interstate carriers because the facts did not show that the proceeds of the license fees were to be in any part applied to the construction or maintenance of the city streets and hence the ordinance could not be justified as an excise tax for the use of the city streets.

In *Joseph v. Carter & Weekes Stevedoring Co.,* 330 U. S. 422, a New York City tax was declared invalid and *unconstitutional* as to persons engaged in interstate commerce, where the ordinance provided: "Imposition of tax. a. For the privilege of carrying on . . . within the city any trade, . . . or commercial activity . . ., every person shall pay an excise tax . . . upon all receipts received in and/or allocable to the city from such . . . trade, . . . or commercial activity . . . carried on by him . . .". The Court said (pages 429-430-433): "A power in a state to tax interstate commerce or its gross proceeds, unhampered by the Commerce Clause, would permit a multiple burden upon that commerce. This has been noted as ground for their invalidation. Western Live Stock v. Bureau, 303 U. S. 250, 255 . . . . The actual effect on the cost of carrying on the commerce does not differ from that imposed by any other tax exaction—ad valorem, net income or excise. Cf. Western Live Stock v. Bureau, supra, 254.

". . . in Gwinn, White & Prince, Inc. v. Henneford, . . . a state gross receipts tax on income from marketing fruit interstate was invalidated under the Commerce Clause, . . .

". . . Stevedoring, we conclude, is essentially a part of the commerce itself and therefore *a tax upon its gross receipts or upon the privilege of conducting the business of stevedoring for interstate and foreign commerce, measured by those gross receipts, is invalid.* We affirm the rule of Puget Sound Stevedoring Company. 'What makes the tax invalid is the fact that there is interference by a State with the freedom of interstate commerce.' Freeman v. Hewit, supra, p. 256."

To summarize: A State cannot tax directly or by subterfuge interstate commerce as such, nor can it tax a person or corporation for the privilege of engaging in interstate commerce.

Moreover, the burden of proving that the tax on interstate commerce is imposed as compensation or reimbursement for the cost of the construction or maintenance or use of its highways is upon the State: *Ingels v. Morf,* 300 U. S. 290, 294; *Sprout v. South Bend,* 277 U. S. 163, 169, 170; *Interstate Transit, Inc. v. Lindsey,* 283 U. S. 183, 186; *Postal Telegraph-Cable Co. v. Richmond,* 249 U. S. 252, 259; *Clyde Mallory Lines v. Alabama,* 296 U. S. 261, 267.

As the majority opinion admits: "Where a tax is imposed by a State upon carriers engaged in interstate commerce it must affirmatively appear that it is levied only as compensation for the use of its highways." How can it "affirmatively appear that the tax is levied only as compensation for the use of its highways" when the demurrer admits that none of the tax (or tax receipts) are used directly or indirectly for the cost, maintenance or use of the State's highways.

Under the majority opinion, a State can tax interstate commerce at will and constitutionally justify it merely by reciting in the Act that the tax is imposed for use of the highways, even though not a penny is used directly, indirectly, or in practical operation and effect, for use of the highways. This makes a mockery of the interstate commerce clause and is likewise, in our judgment, contrary to the decisions of the Supreme Court.

*Ingels v. Morf,* 300 U. S. 290, is so similar on its facts to the instant case, i.e., in its disposition of the tax receipts, that its language is equally applicable to and governs it. In that case a California caravan act imposed a fee of $15.00 for the transportation or towing from without the state of any vehicle for the purpose of offering the same for sale to a purchaser within the state. The act directed *the fees collected should be paid into the general fund of the state treasury* to reimburse the treasury for the expense of administration and enforcement of the act and the added expense of policing the highways. The act was declared *unconstitutional.* Mr. Justice STONE, delivering the opinion for a unanimous Court, said (page 294) : "To justify the exaction by a state of a money payment burdening interstate commerce, it must affirmatively appear that it is demanded as reimbursement for the expense of providing facilities, or of enforcing regulations of the commerce which are within its constitutional power. Sprout v. South Bend, 277 U. S. 163, 169, 170; Interstate Transit, Inc. v. Lindsey, 283 U. S. 183, 186; Postal Telegraph-Cable Co. v. Richmond, 249 U. S. 252, 259; Clyde Mallory Lines v. Alabama, 296 U. S. 261, 267. This may appear from the statute itself, Morf v. Bingaman, supra; Clark v. Poor, 274 U. S. 554, 557, *or from the use of the money collected,* to defray such expense. Hicklin v. Coney,

290 U. S. 169, 173; see Kane v. New Jersey, 242 U. S. 160, 168, 169; Aero Mayflower Transit Co. v. Georgia Public Service Comm'n, 295 U. S. 285, 289; compare Interstate Busses Corp. v. Blodgett, supra, 249.

*"Here appellant does not show that the fees collected are used to meet the cost of the construction or maintenance of its highways.* Section 6 of the challenged act, which directs that the permit fees *be paid into the general fund* of the state treasury, is to be *contrasted* with other California statutes relating to motor vehicles, which exact license fees and taxes and direct that they be paid, at least in part, into special funds devoted to highway purposes. Motor Fuel License Act, sec. 13, Cal. Stat. 1923, c. 267, as amended, Cal. Stat. 1935, c. 264; Vehicle Code, sec. 776, 781, Cal. Stat. 1935, c. 27; Cal. Stat. 1935, c. 362, sec. 9 (a), 9 (d). See Interstate Transit, Inc. v. Lindsey, supra, 188-190. *Appellants point to no statute appropriating any part of the general fund of the state treasury for highway purposes, . . ."*.

This is exactly the factual situation that exists in Pennsylvania under the 1951 Amendment and Justice STONE'S opinion is, we repeat, equally applicable to the instant case.

Another case which is so close on its facts to the instant case that it directly rules it, is *Interstate Transit, Inc. v. Lindsey,* 283 U. S. 183. In that case Tennessee imposed a "privilege" tax of $500.00 upon interstate motor buses graduated according to carrying capacity. The highways were maintained by the State out of its general funds and there was no discrimination between intra and inter state operators. The Court held the Act was unconstitutional because *a detailed examination of the statute* showed that the tax imposed was not compensation for the use of the highways, but for the privilege of doing an interstate

bus business. Justice BRANDEIS, delivering the opinion of the Court, said (pages 185-186-188-189-190): "While *a State may not lay a tax on the privilege of engaging in interstate commerce,* Sprout v. South Bend, 277 U. S. 163, it may impose even upon motor vehicles engaged exclusively in interstate commerce a charge, as compensation for the use of the public highways, which is a fair contribution to the cost of constructing and maintaining them and of regulating the traffic thereon. Kane v. New Jersey, 242 U. S. 160, 168-169; Clark v. Poor, 274 U. S. 554; Sprout v. South Bend, supra, pp. 169-170. As such a charge is a direct burden on interstate commerce, *the tax cannot be sustained unless it appears affirmatively,* in some way, *that it is levied only as compensation for use of the highways or to defray the expense of* regulating motor traffic . . . . Hendrick v. Maryland, 235 U. S. 610, 612; Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 250-252. Compare Interstate Busses Corp. v. Holyoke Street Ry., 273 U. S. 45, 51. But the mere fact that the tax falls upon one who uses the highway is not enough to give it presumptive validity. . . .

"*The conclusion that the tax challenged is laid for the privilege of doing business and not as compensation for the use of the highways is confirmed by contrasting* §4 of the 1927 Act with those statutes which admittedly provide for defraying the cost of constructing and maintaining highways and regulating traffic thereon. The former declares specifically in connection with the privilege tax on interstate busses that the proceeds 'shall go and belong exclusively to the General Funds of the State.' On the other hand, in the legislation by which Tennessee has provided for defraying the cost of constructing and maintaining the state highways and regulating motor traffic, it has been

the consistent practice to prescribe that moneys raised for this purpose shall be segregated and go into the Highway Fund. The present system of motor regulations was inaugurated in 1915. At the same session, the legislature created a State Highway Commission with power to construct and maintain highways. In these statutes and in many later ones—prescribing additional fees for the registration and licensing of motor vehicles, imposing gasoline taxes, laying a one mill road tax, and authorizing the issue of bonds for the construction of highways and bridges,—the legislature provided that the proceeds of the fees, taxes, and bonds, and of the tolls collected on bridges, should be set apart as state highway and bridge funds to be expended by the Commission exclusively for the construction and maintenance of highways or bridges. The absence in §4 of this provision, which characterizes almost every other Tennessee statute relating to the construction and maintenance of highways or the regulation of motor vehicle traffic, is additional evidence that the present tax was not exacted for such purposes, but merely as a privilege tax on the carrying on of interstate business.

". . . But since a State may demand of one carrying on an interstate bus business only fair compensation for what it gives, such imposition, although termed a tax, cannot be tested by standards which generally determine the validity of taxes. *Being valid only if compensatory, the charge must be necessarily predicated upon the use made, or to be made, of the highways of the State.* Clark v. Poor, supra . . . . We need not therefore consider whether the tax exacted from this appellant is unreasonably large or unjustly discriminatory."

The original Act of 1931 was undoubtedly, as it purported to be, a tax imposed as compensation for

the use of the highways. The Amendatory Act of 1951 eliminated the credits allowed in the 1931 Act for vehicle registration fees paid to the State and for city taxes paid for use of highways. But far more important, is the fact that *until the act of 1951,* sec. 9 of the Act of *1931* provided that taxes collected from intrastate operators should be credited to the general fund of the Commonwealth, *while taxes collected from companies doing an interstate business should be credited to the Motor License Fund.* Moreover, prior to the recent constitutional amendment of 1945, Art. IX, sec. 18, the legislature appropriated money for use of the highways and for the expenses of the highway department out of its general fund; and likewise used revenue derived from taxes on its highways for both highway purposes and general revenue purposes. This condition has been radically changed by the Act of 1951 and by the Constitutional Amendment of 1945 and by the greatly altered condition of the general fund and the highway fund. Section 9 of the Act of 1931, as amended by the Act of (December 27) 1951, now provides that *all taxes* collected under the amendatory act shall be paid into or credited to the *General Fund.*

Defendants' demurrer admits (1) that the highway fund has an enormous balance which is more than amply sufficient to pay for the cost and expense of constructing and maintaining roads, as well as the expenses of the highway department; and (2) that the legislature has not appropriated and does not appropriate any moneys out of the general fund for highway purposes; and (3) that the funds used for highway purposes are derived *solely* from registration fees, gasoline and other motor fuel excise taxes and similar fees and taxes, all of which go into the motor license fund and/or may be used *solely* for public highways and costs and expenses incident thereto.

472

This is not a case where a part of the taxes collected from interstate carriers under the 1951 Amendatory Act are used for highway purposes; it is not a case where the taxes collected from interstate carriers are paid into a general fund or state treasury, out of which the legislature appropriates moneys for highway and other purposes; this is not a case where taxes collected from non-highway users are used for highway purposes and vice versa. *This is a case where admittedly not one cent of the taxes levied upon and collected from interstate carriers under this Amendatory Act of 1951 are used, directly, indirectly, or in practical operation and effect, for highway purposes or for the expenses of the highway department;*—this is a case where the hands are the hands of Esau but the voice is the voice of Jacob.

To hold under the facts which have been pleaded and admitted, that this tax is Constitutionally applicable to a bus carrier engaged solely in interstate commerce would be to nullify and make meaningless the Interstate Commerce Clause of the Federal Constitution and the numerous decisions which maintain and support it. I would therefore hold, under the authority of *Interstate Transit, Inc. v. Lindsey,* 283 U. S.; *Ingels v. Morf,* 300 U. S., supra; *Joseph v. Carter & Weekes Stevedoring Co.,* 330 U. S., supra; and *Spector Motor Service, Inc. v. O'Connor,* 340 U. S. supra, that the Amendatory Act of 1951 violates the Commerce Clause of the Constitution and as to interstate carriers is unconstitutional and void.

---

* The Commonwealth must have believed that the Amendment of 1951 was unconstitutional because on August 21, 1953, the Act was amended and changed to provide that the tax receipts from intrastate commerce were to be paid into the State Treasury and credited to the General Fund, while all taxes paid by and tax receipts from interstate commerce were to be thereafter credited to the Motor License Fund.