## Pennsylvania Greyhound Lines, Inc., v. Commonwealth

*John McI. Smith*, for Appellant.

*George W. Keitel*, Deputy Attorney General, and *Herbert B. Cohen*, Attorney General, for Commonwealth.

NEELY, J., April 30, 1956.—This matter is here on appeal of Pennsylvania Greyhound Lines, Inc., from the refusal of the Board of Finance and Revenue to review the tax settlement made by the Commonwealth's fiscal officers of appellant's gross receipts tax for the year 1952 levied under the Act of June 22, 1931, P. L. 694, as amended by the Act of December 27, 1951, P. L. 1761, 72 PS §2183, et seq. The parties have stipulated the facts, and in their stipulation have agreed that this case should be tried without a jury.

### The Statute

The Act of 1931, as amended, imposed an excise tax for the use of the highways of this Commonwealth upon companies engaged in the business of carrying

passengers or property for hire over the highways of this Commonwealth, at the rate of eight mills upon the dollar upon the gross receipts of such companies. Under the statute, where a company operates over routes in interstate transportation, the tax is determined by an apportionment formula. In this formula, the numerator of the fraction is the number of miles operated in Pennsylvania, the denominator is the total miles operated and the multiplicand is the gross receipts of the carrier from all its operations. For purposes of disposing of this case, we adopt the stipulation as filed by the parties, and, on the basis of that stipulation, we herein make our own

### Findings of Fact

1. Appellant is a Delaware corporation authorized to do business in Pennsylvania as an interstate motor carrier of passengers and freight for hire and for the year 1952 was subject to the provisions of the Act of June 22, 1931, P. L. 694, as amended by the Act of December 27, 1951, P. L. 1761.

2. Appellant filed its gross receipts tax return for the year ending December 31, 1952, wherein it computed its total gross receipts as $25,091,098.87, and deducted therefrom an item of revenue from the transportation of military or other governmental personnel traveling under orders and paid for by governmental travel orders in the amount of $321,733.93. Accordingly, appellant reported net bus revenue for the year 1952 of $24,769,364.94.

3. In appellant's return for the year 1952, there was allocated to Pennsylvania 30.948 percent of appellant's gross income; appellant in its return applied this percentage to its bus revenue item of $24,769,-364.94, allocated to Pennsylvania gross receipts amounting to $7,665,623.06, and returned gross receipts tax due under the Act of 1931, as amended, in the amount of $61,324.98.

4. However, on May 14, 1954, the tax was settled by the Department of Revenue and approved by the Auditor General; in this settlement there was a disallowance of any deduction for the transportation of military or other governmental personnel, and total bus revenue was determined to be $25,091,099; this computation resulted in the allocation of revenue to Pennsylvania of $7,765,290.

5. The amount of tax due the Commonwealth, as settled by the above mentioned fiscal officers, was $62,-122.32 ($797.34 more than appellant's return), which amount has been paid in full.

6. Appellant filed a petition with the Department of Revenue and Auditor General for resettlement of the tax on August 11, 1954, and this petition was refused. Whereupon, on January 10, 1955, appellant filed its petition for review with the Board of Finance and Revenue, and on February 16, 1955, the prayer of this petition for review was refused by the said Board of Finance and Revenue, and the action taken by the Department of Revenue, as approved by the Auditor General, was sustained by said board; whereupon, appellant prosecuted this appeal from the refusal of the Board of Finance and Revenue to review the action of the Department of Revenue and the Auditor General.

### Discussion

Appellant claims that in the allocation fraction the item of $321,733.93, representing revenue from the transportation of military and governmental personnel, was improperly included within the multiplicand, and that the improper inclusion of this figure resulted in requiring appellant to overpay its tax in the amount of $797.34. It is appellant's contention that under the doctrine of implied immunity in the Constitution of the United States, means and instrumentalities em-

ployed by the Federal Government to carry on its constitutional powers are immune from State taxation. And, in support of this proposition, there is cited the celebrated case of McCulloch v. The State of Maryland, 4 Wheaton 316 (1819), wherein Chief Justice Marshall made the famous pronouncement that "the power to tax involves the power to destroy", and decided that State Governments could not exercise this power by taxing certain means and instrumentalities by which the Federal Government carried on its constitutional functions. The case involved a tax imposed by the State of Maryland upon a branch of the Bank of the United States which had been chartered by an Act of Congress. It was a direct tax on the operations of the bank. Maryland had enacted a statute which required any bank doing business in that State, which was not chartered by the legislature thereof, to issue its notes only upon paper bearing stamps of specified denominations. The paper was sold by the State and payment of the amount indicated by the stamps was required at the time the paper was purchased. The statute also provided that any institution could relieve itself of the necessity of complying with the stamp requirements by paying the annual sum of $15,000 to the State. In invalidating the Maryland statute, Chief Justice Marshall, speaking for the court, said, at page 431:

". . . the power to tax involves the power to destroy; . . .

"If the states may tax one instrument, employed by the government in the execution of its powers, they may tax any and every other instrument. . . . This was not intended by the American people. They did not design to make their government dependent on the states."

Appellant argues that the tax here was levied upon a means or instrumentality by which the Federal Gov-

ernment was carrying on its constitutional functions, and the State Government has no right under the doctrine of McCulloch v. The State of Maryland, supra, "to tax any of the constitutional means employed by the government of the Union to execute its constitutional powers".

Section 1104 of The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §1104, provides, inter alia, that: "Every . . . appeal shall be accompanied with a specification of objections to the settlement, resettlement or other decision, as the case may be . . .", and ". . . no questions shall be raised . . . that were not . . . set forth in the specification of objections contained in the affidavit accompanying the appeal . . .". We are limited in our consideration of this appeal to appellant's specification of objections.

The specification of objections filed by appellant sets forth that the imposition of the gross receipts tax upon revenue derived wholly from transportation of military or other governmental personnel, traveling under orders and paid for by governmental travel orders issued by the United States Government, is illegal and void, because such imposition would constitute a tax by this Commonwealth on the means employed by the Government of the United States to execute its constitutional powers, and that such tax must be held to be invalid for the same reasons that: (a) Receipts of transportation companies derived from carrying the United States mails have not been subject to taxation under another gross receipts tax law of this Commonwealth, there being no distinction between governmental personnel traveling on governmental orders and the carrying of the mails, since both constitute lawful functions of the United States Government; (b) power and light companies cannot be taxed on the gross receipts derived from the sale of electricity to the United States Government or its agencies; (c) a

State cannot indirectly tax revenue derived from messages transmitted by telegraph companies for the United States Government. We must determine, therefore, under The Fiscal Code, whether, on the basis of the specification of objections outlined in the appeal, this was a valid tax settlement and the receipts from transportation of military and governmental personnel were properly included in the allocation fraction for the purpose of imposing the gross receipts tax in this case.

At the outset, and of first importance, it becomes necessary to determine the nature of this tax. In Shirks Motor Express Corporation v. Messner, 375 Pa. 450, 455, 456 (1953), the Supreme Court, speaking through Mr. Justice Chidsey, in upholding the validity of the tax imposed by the Act of 1931 upon gross receipts derived from interstate commerce said:

"It is well settled that a State does not have the power to tax interstate commerce as such . . . (citing cases). It is equally well settled that a State may, consistently with the Commerce Clause, impose upon vehicles engaged in interstate commerce a reasonable, nondiscriminatory excise tax as compensation for the use of its highways: . . .

". . . This limitation (interstate commerce) upon the taxing power of a State has not been violated where the taxing statute discloses that the incidence of the tax is apportioned to the use of the State's highways *or* where the proceeds of the tax are apportioned directly or indirectly to highway purposes. . . ." (Parentheses supplied.)

And continuing at page 458, the opinion states: ". . . The statute under consideration provides a reasonably accurate and nondiscriminatory formula to reflect the use of highways within this Commonwealth."

The Supreme Court of the United States has held that taxes levied by States as compensation for the use of the highways do not contravene the commerce clause of the Federal Constitution: Aero Mayflower Transit Co. v. Board of Railroad Commissioners of Montana, 332 U. S. 495 (1947); Clark v. Paul Gray, Inc., 306 U. S. 583 (1939); Clark v. Poor, 274 U. S. 554 (1927); Interstate Busses Corporation v. Blodgett, 276 U. S. 245 (1928); Morf v. Bingaman, 298 U. S. 407 (1936). The basic theory supporting the validity of State taxation of interstate transportation for the use of State highways is that interstate commerce should fairly pay its way for the use of those highways.

Because interstate commerce should pay its way for the use of the highways, it is not immune from State taxation for such highway use. And if interstate commerce is not immune from State taxation in this field, for the reason that such commerce should pay its fair share for the use of the highways, then it would also seem, by the same process of reasoning, that the immunity implied in favor of instrumentalities carrying out functions for the Federal Government must necessarily be subordinated to the State's right to exact taxation for the use of its highways. Thus, it would seem that plaintiff's contention of implied immunity from State taxation in this field should have no application because the Commonwealth of Pennsylvania should be permitted to levy taxes for the use of its highways.

We think it is clear that the incidence of the tax imposed under the Act of 1931, as amended, is on the privilege of using the highways of this Commonwealth. See section 5 of the Act of 1931, 72 PS §2187, referring to the privilege. It is levied as compensation for their use and the amount of the tax is measured by the extent of that use. It is important that as to

interstate motor carriers the formula be reasonably accurate so as fairly to reflect the extent of the use of the highways. Again, we quote from Mr. Justice Chidsey's opinion in the Shirks Motor case, at page 458:

". . . it is necessary to determine whether the formula set forth in the Act of 1931, as amended by the Act of 1951, is reasonably calculated to impose the tax only on that portion of the operation of interstate carriers which is effected by the use of highways within the Commonwealth of Pennsylvania, and whether the tax is nondiscriminatory and reasonable in amount. The numerator of the tax formula is the number of miles operated in Pennsylvania. The denominator is the total number of miles operated. The multiple is the gross receipts of the carrier from all of its operations. The tax of eight mills is imposed upon the result of this calculation. The statute under consideration provides a reasonably accurate and nondiscriminatory formula to reflect the use of highways within this Commonwealth. In all of the cases cited by the appellants, either there was no formula whatever or the formula did not reflect use of the highways."

In disposing of appellant's contention in this case, then, we think we must bear in mind that we are here dealing with a tax formula, the purpose of which is to reflect the use of the highways and assess a tax based upon that use. The gross receipts derived from the transportation of governmental personnel was only one of the elements used to reflect that use. The tax was not imposed on the receipts from transportation of governmental personnel as such. The incidence of the tax was on the privilege of using the highways.

In the field of privilege taxes, the implied immunity doctrine was abandoned in Wilson v. Cook, 327 U. S. 474 (1946), which upheld a privilege or license tax imposed in connection with activites of severing tim-

ber for commercial purposes, notwithstanding the fact that the lumber was severed from Government lands under contract with the Federal Government. And in American Airways, Inc., v. Wallace, 287 U. S. 565 (1932), affirming per curiam 57 F. 2d 877, it was held that a privilege tax imposed upon distributors of gasoline was valid insofar as an airplane carrier of the mails was concerned.

There is a recent decision under this class of tax that must be considered: Esso Standard Oil Co. v. Evans, 345 U. S. 495, 500 (1953). In this case an oil company had entered into a contract with the Federal Government, under which, for a fee, Government owned gasoline was stored in tanks in Tennessee which were owned by the oil company, or leased by it from another private corporation. The Government agreed to assume liability for all State taxes. The State of Tennessee levied against the company a "special privilege tax" of six cents per gallon "for engaging in and carrying on such business". The Supreme Court held that the sovereign immunity of the Federal Government did not prohibit this tax, saying at page 500:

". . . The Constitution does not extend sovereign exemption from state taxation to corporations or individuals, contracting with the United States, merely because their activities are useful to the Government."

An earlier case, Williams v. City of Talladega, 226 U. S. 404 (1912), cited by appellant, seems to invoke the doctrine of implied immunity where a privilege tax was involved. The Supreme Court invalidated an ordinance which taxed the privilege of carrying on the telegraph business without exempting the sending of Government messages. Permission to erect poles and wires had been granted by an Act of Congress, and the telegraph company was then an instrumentality, in a sense, created by Congress.

As we have already pointed out, the privilege tax in question contains the significant feature that appellant is taxed under the Act of 1931, as amended, to compensate the State of Pennsylvania for the use of its highways. There should be no implied immunity from the obligation to pay this tax, the courts having recognized that in other matters within the control of the Federal Government, notably interstate commerce, immunity from a tax such as that imposed by the Act of 1931 does not exist. In view of these later decisions by the United States Supreme Court involving privilege taxes, we do not feel that we can invoke the doctrine of implied immunity in this case.

Just as interstate commerce should pay its fair share for the use of our highways, so appellant, even though furthering functions useful to the Federal Government, should pay for that use. Where a privilege tax is enacted within the legitimate field of State taxation, and the tax has its incidence within that field, it should not be stricken down merely because it has some incidental, indirect and remote effect on an activity within the control of the Federal Government. While, for example, a State cannot regulate interstate commerce, it is not precluded from the enactment of legislation that affects that commerce.

The effect on the Federal Government of this gross receipts tax was indirect and remote, since it imposed no financial burden on the Government. This gross receipts tax, in its incidence on the privilege of using the highways, differs greatly from the tax imposed in McCulloch v. The State of Maryland, supra, cited by appellant, where there was a direct tax on a banking institution chartered by the Federal Government and levied on the operations of the bank.

It seems to us that the tax imposed under the Act of 1931, as amended, differs in its incidence from the gross receipts tax imposed under section 23 of the

Act of June 1, 1889, P. L. 420, as amended. In Commonwealth of Pennsylvania v. Philadelphia Electric Company, 36 Dauph. 265, 274, 339 (1932), Judge Hargest held that the Commonwealth is not entitled under the Act of 1889, as amended by the Act of April 25, 1929, P. L. 662, to a tax on the gross receipts derived by a power company from the sale of electricity to the United States Government. Whereas, in the Philadelphia Electric Company case, the tax was imposed directly on the gross receipts as such, here, as we have pointed out, the tax was levied as compensation for the use of the highways. To us it seems there is a manifest difference in the incidence of the tax laid in the instant case and that imposed under the Act of 1889.

Appellant's specification of objections suggests that its gross receipts from the transportation of personnel of the Federal Government in the instant case is analogous to certain other gross receipts which have been accorded exemptions by the Supreme Court from other forms of taxation. Since appellant contends that the decisions of the court outside the field of privilege taxes support its contention of implied immunity, we deem it important to mention some decisions in these other fields.

Appellant contends that the receipts of transportation companies derived from carrying the United States mails have not been subject to taxation under the gross receipts tax laws of this Commonwealth, and cites Commonwealth v. Delaware, Lackawanna and Western Railroad Company, 4 Dauph. 192 (1888), in support of its contention. However, the case of Alward v. Johnson, 282 U. S. 509, 514 (1931), must also be considered at this point since it is in disagreement with our court's early decision at 4 Dauph. 192, supra. The Supreme Court sustained a State tax on gross receipts levied upon an automotive stage line

carrying the mails. More than half the gross receipts taxed were derived from the carriage of the United States mails, the remainder from the carriage of passengers and freight. The pleadings established that the property used in earning these receipts was devoted chiefly to carrying the mails, and that without the contract with the Government "the stage line could not be operated profitably". The Supreme Court upheld the tax on these gross receipts, saying:

"Nor do we think petitioner's property was entitled to exemption from state taxation because used in connection with the transportation of the mails. There was no tax upon the contract for such carriage; the burden laid upon the property employed affected operations of the Federal Government only remotely. Railroad Co. v. Peniston, 18 Wall. 5, 30; Metcalf & Eddy v. Mitchell, 269 U. S. 514. The facts in Panhandle Oil Co. v. Mississippi, 277 U. S. 218, and New Jersey Bell Tel. Co. v. State Board, 280 U. S. 338, were held to establish direct interference with or burden upon the exercise of a Federal right. The principles there applied are not controlling here." See, also, American Airways, Inc., v. Wallace, supra.

Also to be considered is James v. Dravo Contracting Co., 302 U. S. 134, 160 (1937). There the State of West Virginia imposed a tax upon the gross receipts of every person engaged in the business of contracting within the State. The taxpayer corporation was performing a construction contract with the Federal Government. It was contended that the tax was invalid as laying a burden upon the operations of the Federal Government. The court held that a nondiscriminatory State tax on a contractor's gross receipts under the contract is not unconstitutional as a tax laid on the contract itself or as otherwise directly burdening the Government. In upholding the validity of the tax, the Supreme Court said, at page 160:

"But if it be assumed that the gross receipts tax may increase the cost to the Government, that fact would not invalidate the tax. With respect to that effect, a tax on the contractor's gross receipts would not differ from a tax on the contractor's property and equipment necessarily used in the performance of the contract. Concededly, such a tax may validly be laid. Property taxes are naturally, as in this case, reckoned as a part of the expense of doing the work."

And in the field of income taxes, the doctrine of implied immunity has not been invoked. In Graves v. New York ex rel. O'Keefe, 306 U. S. 466, 480, 481 (1939), it was held that the imposition by the State of New York of an income tax on the salary of an employe of the Home Owners' Loan Corporation did not place an unconstitutional burden upon the Federal Government. The court held that the tax was not upon the Home Owners' Loan Corporation or its property or income, nor was it "paid by the corporation or the government from their funds". The court further said:

". . . It is measured by income which becomes the property of the taxpayer when received as compensation for his services; and the tax laid upon the privilege of receiving it is paid from his private funds and not from the funds of the government, either directly or indirectly. The theory, which once won a qualified approval, that a tax on income is legally or economically a tax on its source, is no longer tenable . . . and the only possible basis for implying a constitutional immunity from state income tax of the salary of an employee of the national government or of a governmental agency is that the economic burden of the tax is in some way passed on so as to impose a burden on the national government tantamount to an interference by one government with the other in the performance of its functions."

Private property, used by its owner in performing services for the Federal Government, is not immune from State and local property taxes, and the Supreme Court has upheld a tax on machinery and boats used in the performance of a dredging contract with the United States Government: Gromer v. Standard Dredging Company, 224 U. S. 362 (1912).

The Supreme Court has invalidated sales taxes where their incidence was upon the Federal Government and imposed a burden on that Government: Panhandle Oil Company v. Mississippi ex rel. Knox, 277 U. S. 218 (1928); Kern-Limerick, Inc., v. Scurlock, 347 U. S. 110 (1954); United States v. County of Allegheny, 322 U. S. 174 (1944). But has reached a contrary conclusion where the incidence of the tax was not on the Federal Government: Alabama v. King & Boozer, 314 U. S. 1 (1941); Trinity Farm Construction Co. v. Grosjean, 291 U. S. 466 (1934).

None of these cases last cited, we feel, are applicable in the instant case, however. As we have already pointed out, we are here dealing with a tax of an entirely different nature levied upon motor carriers as compensation for the use of our highways. There is no financial burden on the Federal Government, and any effect on the Federal Government must necessarily be indirect and remote. We have not attempted to review all of the authorities in the wide field involving the doctrine of implied immunity from State taxation of agencies performing functions for the Federal Government. We have endeavored to emphasize the nature of the tax involved and to point out that it differs very materially from sales taxes, from gross receipts taxes imposed as property taxes and from income taxes. We have considered all the cases cited by the parties in their briefs, and many others, and have cited herein those decisions that we feel particularly shed light on the problem before us.

We are of the opinion that the action of the fiscal officers in settling the tax against appellant for the year 1952 in the amount of $62,122.32 was correct, and that the Board of Finance and Revenue likewise was correct in refusing appellant's petition to review that settlement. In view of the foregoing, we make the following

*Conclusions of Law*

1. In settlement of the tax imposed for the year 1952 under the Act of June 22, 1931, P. L. 694, as amended by the Act of December 27, 1951, P. L. 1761, the Department of Revenue and the Auditor General properly included in the total gross receipts the receipts from transportation of governmental personnel, for the purpose of imposing the gross receipts tax settled under this act.

2. The amount of the tax paid by appellant to the Commonwealth of Pennsylvania was due for the year 1952.

3. The doctrine of implied immunity has no application to the transportation of governmental personnel during the year 1952, and the gross receipts derived from this transportation are not exempt from the tax in question.

4. The action of the Department of Revenue and the Auditor General in settling the tax against appellant for the year 1952 in the amount of $62,122.32 was correct, and the Board of Finance and Revenue likewise was correct in refusing appellant's petition to review that settlement.

5. The entire amount of tax due the Commonwealth having been paid, judgment must be entered in favor of the Commonwealth and against appellant, in accordance with the following schedule:

Amount of tax claimed by the Commonwealth (paid in full) ............ $62,122.32

Amount of tax claimed to be due by appellant  ........................  61,324.98

Amount of tax in dispute ............ $    797.34

*Order*

And now, April 30, 1956, the appeal is dismissed; it is hereby directed that judgment be entered in favor of the Commonwealth and against Pennsylvania Greyhound Lines, Inc., for tax of $797.34 unless exceptions be filed to this order within 30 days hereof, and it is further ordered that judgment shall be marked satisfied of record upon payment of costs by the said Pennsylvania Greyhound Lines, Inc. The prothonotary shall notify the parties hereto or their counsel of this order forthwith.