INGELS, DIRECTOR OF THE MOTOR VEHICLE DEPARTMENT, ET AL. *v.* MORF ET AL.

No. 456. Argued February 5, 1937.—Decided March 1, 1937.

*Messrs. Frank Richards* and *Amos M. Mathews,* with whom *Mr. U. S. Webb,* Attorney General of California, and *Mr. James S. Howie* were on the brief, for appellants.

292

*Messrs. Ralph K. Pierson* and *Byron J. Walters,* with whom *Mr. Samuel P. Block* was on the brief, for appellees.

MR. JUSTICE STONE delivered the opinion of the Court.

This suit was brought by appellee in the District Court for Southern California, three judges sitting, to restrain appellants, state officers, from enforcing the provisions of the "Caravan" Act, Cal. Stat. 1935, c. 402, as a forbidden burden on interstate commerce, and as an infringement of the due process and equal protection clauses of the Fourteenth Amendment. From a decree granting the relief prayed, the case comes here on appeal under §§ 238 (3), 266, Judicial Code.

The challenged statute defines "caravaning" as the transportation, "from without the state, of any motor vehicle operated on its own wheels or in tow of another vehicle for the purpose of selling or offering the same for sale . . . to any purchaser" located within or without the state. Sections 2 and 3 prohibit caravaning without attaching to each vehicle so transported a special permit issued by the State Motor Vehicle Department, for which a fee of $15 is exacted. A permit is valid only for the trip or trips specified in it, and for a period of ninety days (§ 4). Section 6 directs that the fees collected be paid into the general fund in the state treasury, and declares that they are "intended to reimburse the State treasury for the added expense which the State may incur in the administration and enforcement of this Act, and the added expense of policing the highways over which such caravaning may be conducted, so as to provide for

the safety of traffic on such highways where caravaning is being conducted."

Appellee, a resident of Los Angeles, California, carries on his business there as a dealer in automobiles. He purchases used automobiles in other states and transports them from the place of purchase to points on the California boundary line, thence over state highways to Los Angeles, and sometimes to other places, where he offers them for sale. He conducts from 20 to 25% of the total movement in such traffic. Some of his vehicles are coupled together in twos, and move in caravans or fleets, sometimes aggregating more than 30 cars. He gave testimony, which appellants sharply challenge, that from 30 to 40% move singly and not in company with any other vehicle. A permit is required for each car, whether it moves alone or as part of a fleet. The district court found that such movement of vehicles in caravans of more than four create special traffic difficulties, but that the movement of four or less "constitutes no police problem"; that there is considerable like traffic carried on wholly within the state, for which the fee of $15 is not exacted and for which no similar or other fee is required; and that the demanded fee for each car moving in the interstate traffic is excessive and bears no reasonable relation to the increased cost of policing. It concluded, as the appellee contends here, that the statute denies to appellee due process and equal protection, and places a forbidden burden on, and discriminates against, interstate commerce.

We find it necessary to consider only the contention that the licensing provisions burden interstate commerce. We do not discuss appellants' suggestion that, contrary to the finding below, there is no evidence of comparable traffic moving intrastate, and hence no discrimination against interstate commerce by the failure of the Act to

exact a fee of those engaged in intrastate commerce. It is not denied that the permit fee, imposed upon those engaged in interstate commerce, burdens this commerce, but appellants urge that it is a permissible charge for the use of the state highways and for the cost of policing the traffic, including the cost of administering the Act.

In *Morf* v. *Bingaman,* 298 U. S. 407, recently before this Court, the Caravaning Act of New Mexico, containing some features similar to the present act, was likewise assailed as burdening interstate commerce by the imposition of a fee, of $7.50 for each vehicle moving by its own power, and $5.00 for each vehicle towed by another when moving in caravan. The statute made the privilege of using the highway conditional upon payment of the fee. The fees collected were devoted in part to highway purposes. We held that the fees were a charge for the use of the highways, not shown by the taxpayer to be unreasonable, which the state might lawfully demand. Compare *Hendrick* v. *Maryland,* 235 U. S. 610, 624; *Interstate Busses Corp.* v. *Blodgett,* 276 U. S. 245, 249, 250.

To justify the exaction by a state of a money payment burdening interstate commerce, it must affirmatively appear that it is demanded as reimbursement for the expense of providing facilities, or of enforcing regulations of the commerce which are within its constitutional power. *Sprout* v. *South Bend,* 277 U. S. 163, 169, 170; *Interstate Transit, Inc.* v. *Lindsey,* 283 U. S. 183, 186; *Postal Telegraph-Cable Co.* v. *Richmond,* 249 U. S. 252, 259; *Clyde Mallory Lines* v. *Alabama,* 296 U. S. 261, 267. This may appear from the statute itself, *Morf* v. *Bingaman, supra; Clark* v. *Poor,* 274 U. S. 554, 557, or from the use of the money collected, to defray such expense. *Hicklin* v. *Coney,* 290 U. S. 169, 173; see *Kane* v. *New Jersey,* 242 U. S. 160, 168, 169; *Aero Mayflower Transit Co.,* v. *Georgia Public Service Comm'n,* 295 U. S. 285,

289; compare *Interstate Busses Corp.* v. *Blodgett, supra,* 249.

Here appellant does not show that the fees collected are used to meet the cost of the construction or maintenance of its highways. Section 6 of the challenged act, which directs that the permit fees be paid into the general fund of the state treasury, is to be contrasted with other California statutes relating to motor vehicles, which exact license fees and taxes and direct that they be paid, at least in part, into special funds devoted to highway purposes. Motor Fuel License Act, § 13, Cal. Stat. 1923, c. 267, as amended, Cal. Stat. 1935, c. 264; Vehicle Code, §§ 776, 781, Cal. Stat. 1935, c. 27; Cal. Stat. 1935, c. 362, §§ 9 (a), 9 (d). See *Interstate Transit, Inc.* v. *Lindsey, supra,* 188-190. Appellants point to no statute appropriating any part of the general fund of the state treasury for highway purposes, and the Street and Highways Code, § 183, Cal. Stat. 1935, c. 29, provides: "With the exception of money authorized by law to be deposited in the state highway general fund, all money available for the acquisition of real property or interest therein for state highways or for construction, maintenance or improvement of state highways, or highways in state parks, shall be deposited in the state highway fund."

Hence we must look to the statute itself to ascertain the purposes for which the permit fees are collected. On this point it is explicit. It declares (§ 6) that they are intended to reimburse the state treasury for the added expense of administering the Caravan Act and policing the caravaning traffic. This negatives any inference of the purpose of the collection which might otherwise be drawn from the statute, and from its provision that the permit is prerequisite to the use of the highways. Compare *Morf* v. *Bingaman, supra.* It is true that this declaration is not an appropriation of the moneys collected

and it does not foreclose the use of the fund for highway maintenance, should the state elect to do so. But until such appropriation is made the statute itself states the legislative purpose, and precludes state officials from asserting that the fees are collected for any other.

The burden rests on appellee to show that the fee is excessive for the declared purpose. *Hendrick* v. *Maryland, supra,* 624; *Interstate Busses Corp.* v. *Blodgett, supra,* 250; *Morf* v. *Bingaman, supra,* 410. But the trial court has found that it is excessive and the finding is amply supported by evidence. In 1934, 9,663 cars were caravaned, and in the first eleven months of 1935, 14,000. This supports the inference of the trial court that 15,000 cars are brought into the state, annually, for sale under the conditions defined in the Act. There was testimony that the expense involved in issuing caravaning permits is "about $5.00 per car," although it appeared that the permit fee for local pleasure cars, numbering 1,960,000 was $3.00 per year of which only 35% ($1.05) is devoted to administrative expenses.

The Caravan Act became effective September 15, 1935. A permit granted under it is confined to a limited movement from the state boundary to the immediate point of destination. The undisputed evidence shows that prior to the passage of the measure two new district inspectors were appointed solely on account of caravaning, and fourteen new highway patrolmen were "assigned," partially because of caravaning and its effect on traffic. The chief of the California highway patrol, in summarizing his testimony, said that he had put on "approximately six additional men over the whole state because there were caravans on the road, and I anticipate putting on more men." They receive a monthly salary of $170, which may eventually be increased to $225. The district court found that the evidence indi-

cated that a total of ten men at a salary of $200 a month, and at an aggregate cost of $24,000 a year, would be adequate to police the traffic, whereas the permit fees from 15,000 cars would yield an annual return of $225,000.

We cannot say that the evidence does not support the conclusion of the trial court that the cost of policing would be amply met by a license fee of one-third of the amount so charged. The administrative expense of issuing the permits appears not to have been included, but the testimony that that expense was about $5.00 per car does not bridge the arithmetical gap, and does not impeach the court's conclusion that the permit fee bears no reasonable relation to the total cost of regulation, to defray which it is collected. It rightly held that the licensing provisions of the statute impose an unconstitutional burden on interstate commerce.

On this record we are not required to consider whether the provisions of § 2 which make it unlawful "to operate three or more vehicles or groups of vehicles in a caravan unless a space of at least one hundred fifty feet shall at all times be maintained between each vehicle or group of vehicles being so caravaned" may be enforced if applied, independently of the licensing provisions, in a statute non-discriminatory in its operation.          *Affirmed.*