## STATE v HONAKER

Ohio Common Pleas, Hamilton Co

Decided Jan 8, 1938

Lawrence J. Smith, Cincinnati, for Honaker.

Herbert S. Duffy, Attorney General, Columbus, R. M. Winegardner, Asst. Attorney General, Columbus, Walter M. Locke, Asst. Prosecuting Atty., Cincinnati, and Thomas C. Lavery, Cincinnati, for Tax Commission.

## OPINION

By MACK, J.

Instant case is an appeal from a judgment of a justice of the peace imposing a fine of $50.00 upon appellant for failure to pay an assessment of $5.00 levied against him by the Tax Commission of Ohio for alleged "use tax."

Inasmuch as the record shows with absolute certainty that appellant Honaker, a resident of Ohio, on April 28, 1936, purchased a Chevrolet coupe from Craig Motor Company, at Lawrenceburg, Indiana, and that his ownership thereof was registered in Ohio, and a motor vehicle license for such coupe was issued by the state of Ohio for his use of same, it is deemed unnecessary to consider any matters argued herein, except those relating to the constitutionality and validity of the so-called "use tax" of the state of Ohio under the Constitutions of the United States and the state of Ohio.

**Article XII, §2, of the Constitution of Ohio,** provides:

"No property, taxed according to value, shall be so taxed in excess of one per cent of its true value in money for all state and local purposes, but laws may be passed authorizing additional taxes to be levied outside of such limitation, either when approved by at least a majority of the electors of the taxing district voting on such proposition, or when provided for by the charter of a municipal corporation."

Article XII, §10, of the Constitution of Ohio, provides:

"Laws may be passed providing for excise and franchise taxes and for the imposition of taxes upon the production of coal, oil, gas and other minerals."

An "excise tax" has been defined by the Supreme Court of Ohio as follows:

"An excise tax is a tax assessed for some specific privilege or immunity granted to some artificial or natural person based upon the grant of such privilege or immunity."

Traction Co. v State, 94 Oh St 24, at 27, per Wanamaker, J.

In Saviers v Smith, Secretary of State, 101 Oh St 132, Johnson, J., at page 137, said:

"Moreover, by the provisions of §10, Article XII of the Constitution, adopted in 1912, it is provided that laws may be passed providing for excise and franchise taxes. An excise tax has been defined to be a tax imposed on the performance of an act, or engaging in an occupation, or on the enjoyment of a privilege, and it is said in 26 Ruling Case Law, 34, that the word has come to have a broader meaning and includes every form of taxation not a burden laid directly on persons or property."

Syllabus 4 of said case is as follows:

"An excise is a tax imposed on the performance of an act, the engaging in an occupation or the enjoyment of a privilege, and by the provisions of §10, Article XII of the Constitution, specific authority has been conferred for the levying of such tax."

Accordingly in accordance with the foregoing constitutional provision and the definition of an "excise tax," it has been held in Ohio as follows:

Taxes levied for the right or privilege to carry on professions or occupations are valid excise taxes.

State ex Zielonka v Carrel, 99 Oh St 220. Loan Co. v Carrel, 106 Oh St 43, Foundry Co. v Landes, 112 Oh St 166.

Taxes levied for the privilege of operating a motor vehicle on the highways of this state are valid excise taxes. Saviers v Smith, Secretary of State, 101 Oh St 132.

The only limitation on the right of municipalities to levy excise taxes is that such taxes may not be levied where the state has

preempted the field by levying taxes upon similar subjects.

Cincinnati v American Telephone & Telegraph Co., 112 Oh St 393; Firestone v Cambridge, 113 Oh St 57; Cincinnati v Oil Works, 123 Oh St 448; Crane v Middletown, 4 Oh Ap 120; Oil Works v Cincinnati, 4 Oh Ap 10.

In accordance with the foregoing principles the court is clearly of opinion that the tax in question here is not a property tax and therefore does not contravene Article XII, §2, of the Constitution of Ohio, but that said tax is an excise tax. The question then remains whether such tax conflicts with the provisions of the Constitution of the United States giving Congress power to regulate interstate commerce.

If one desires to study and analyze what is known as the "sales tax" and as a "use tax", there is a wealth of learned discussions in the law journals published by the leading law schools of this country. See:

1933—The Sales Tax and Transactions in Interstate Commerce, 12 N. C. Law Review, 99; 1934—Legislation, 47 Harvard Law Review 860; 1936—State Sales Transactions and the Commerce Clause, 10 University of Cincinnati Law Review 351; 1936—The Ohio Use Tax, 2 Law Journal Ohio State University 115; 1936—The Sales Tax and Interstate Commerce, 2 Law Journal Ohio State University, 260.

Influence by the economic necessity of raising additional funds, Ohio, following a majority of the other states, adopted what is known as a "sales tax" in 1935.

By the act approved December 13, 1934, (115 Ohio Laws, Part 2, p. 306) the legislature of Ohio enacted a law providing for the levy and collection of a tax upon sales of tangible personal property at retail, etc. The act related to sales in the State of Ohio and expressly exempted in §2 certain sales and among others "sales which are not within the taxing power of this state under the Constitution of the United States."

It was soon discovered that intending purchasers living in districts contiguous to other states bounding Ohio, for the purpose of avoiding the payment of such tax upon an intended purchase, would effect their purchase in such adjoining state, and thereafter enjoy or consume such purchase in Ohio without the payment of the tax which would have been imposed by Ohio had the purchase been made in this state. Thus, for example, in State ex Garner v

Renz, 51 Oh Ap 450 (21 Abs 128), 5 O.O. 379, after the passage of the Ohio Sales Tax several persons engaged in business and a corporation doing business at Toledo, Ohio, purchased in the adjoining state of Illinois motor vehicles, and applying for licenses to use the same in Ohio, were denied by the clerk of courts the right to file their bills of sale so as to procure motor vehicle licenses in Ohio. The refusal was on the ground that the Ohio Sales Tax had not been paid on such purchases. The court granted a mandamus against such clerk upon the following ground:

"No one has suggested that any tax can be imposed or collected on retail sales of other tangible personal property made in another state and our conclusion, of course, is that none can be·imposed or collected on the retail sale of a motor vehicle so consummated."

To meet the strenuous objection of Ohio merchants that this was an unjust discrimination against them, the Ohio Sales Tax Law was amended by an act approved December 23, 1935, (116 Ohio Laws, Part 2, p. 101) which provided as follows:

"Section 2. For the purpose of securing a thorough and efficient system of common schools throughout the state, and for the purpose of reimbursing the state for the expense of administering this act, an excise tax is hereby levied on the storage, use, or other consumption in this state of tangible personal property purchased during the period beginning on the first day of January, 1936, and ending on the 31st day of March, 1937, for storage, use, or other consumption in this state, with the exceptions hereinafter mentioned and described, as follows:"

(Rates similar to those imposed upon sales in Ohio).

By §1 it is provided:

"'Use' means and includes the exercise of any right or power incidental to the ownership of the thing used, excepting as hereinafter provided."

It was also provided that the tax

"does not apply to the storage, use or consumption in this state of tangible personal property under the following described circumstances. * * *

"2. Property, the storage, use or other consumption of which this state is prohibited from taxing under the constitution, or laws of the United States, or under the constitution of this state. This exemption shall not exempt from the application of the tax herein imposed the storage, use or consumption of tangible personal property which was purchased in interstate commerce, but which has come to rest in this state."

While under Article I, §8, of the Constitution of the United States, "the congress shall have power ¹ * * to regulate commerce with foreign nations and among the several states, and with the Indian tribes," nevertheless there are many laws or regulations of the several states which directly or indirectly affect interstate commerce, but are nevertheless held valid and constitutional.

A state may guard against the introduction of anything that may corrupt the morals or endanger the life or health of its citizens, and to this end may enact inspection, quarantine and health laws. Sligh v Kirkwood, 237 U. S. 52; Quano Co. v North Carolina, 171 U. S. 345; Oil Co. v North Carolina, 222 U. S. 380; McLean v Railroad Co., 203 U. S. 38.

Ohio has the right to prevent an interstate bus company doing an intrastate business. **Transportation Co. v Utilities Commission, 113 Oh St 565.**

So also natural gas brought into Ohio through pipes from another state may become the subject of valid legislation when it is segregated into service lines within the state of Ohio. East Ohio Gas Co. v Commission, 283 U. S. 465.

Motor vehicles, driven in caravans through a state over its highways from an adjoining state to another adjoining state, may be subjected to a tax for the purpose of policing such traffic. Morf v Bingham, 298 U. S. 407.

Of course, such tax must be reasonably proportioned to the cost of such supervision, and must not, in effect, be a revenue raising impost. Only to the extent that the tax bears a reasonable relation to the expense of policing the highways will the tax be held constitutional and valid. Ingels v Morf, 300 U. S. 290.

In Castle v **Mason**, 91 Oh St 296, our Supreme Court held that a tax for the inspection of oils, gasoline, etc., brought into Ohio from another state, was unconstitutional and void as imposing an improper burden on interstate commerce if the fees for such inspection were largely in excess of the expense necessary for executing the inspection law.

While the purpose of transporting personal property, purchased in another state

into Ohio is either to sell or to use and enjoy such property, and it might logically be held that such transaction should be untrammeled by the imposition of a tax, nevertheless, before ever the states enacted the recent "sales tax" and the extension thereof by way of "use tax," the Supreme Court of the United States emphatically declared that when the transportation is ended the taxing power of the state, as far as the commerce clause of the Federal Constitution is concerned, may be exerted in any way which the state's constitution and laws permit. It was declared that under such circumstances a tax upon "local sale and use" of the commodity does not conflict with the due process and equal protection clauses of the Federal Constitution. Bowman v Continental Oil Co., 256 U. S. 642; Hart Refineries v Harmon, 278 U. S. 499; Gregg Dyeing Co. v Query, 286 U. S. 472; Edelman v Boeing Air Transport, Inc., 289 U. S. 249.

In many of the foregoing cases a different conclusion might have been reached, in the early days, as to the limitations of the commerce clause of the National Constitution, than is now announced (in the absence of federal tax of regulation upon the particular subject matter) when our country is now no longer sparsely settled, when the expense of governmental functions is stupendously increased, when the economic necessity has called for large sums for the care of the underprivileged, when new and unheard of necessities have arisen, requiring protection of the public health and morals, and the safety of those traveling upon our crowded highways.

For the first time since the enactment by the states of a sales tax and its concomitant use tax, the Supreme Court of the United States had occasion in Henneford v Silas Mason Co., 300 U. S. 577, to pass upon the constitutionality of such legislation with reference to the commerce clause of the National Constitution. Such decision was rendered March 29, 1937, after argument and reargument.

In that case the state of Washington had passed an act similar to our Ohio act, save and except that the provisions as to a "use tax" upon articles purchased in another state and brought into Washington and used there, expressly exempted the imposition of the Washington rate of 2% (which also was its rate on sales) when the state of purchase imposed a similar or higher rate. In event the state of purchase imposed a rate less than 2% then Washington imposed its rate of 2% crediting thereon the tax paid in such other state. Our Ohio Law contains no exemption, either in whole or in part, for any tax paid in another state upon an article there purchased and thereafter transported to and used in Ohio.

While it is true that the amendment approved December 23, 1935, of the Ohio Sales Tax, in §2, declared that its purpose "was to secure a thorough and efficient system of common schools throughout the state, nevertheless it is common knowledge that the amendment was enacted to prevent unjust discrimination against Ohio merchants. Its effect, like that of the Washington act, is thus described by Mr. Justice Cardozo, at page 581, in the opinion in the Henneford v Silas Mason Co. case, viz:

"The practical effect of a system thus conditioned is readily perceived. One of its effects must be that retail sellers in Washington will be helped to compete upon terms of equality with retail dealers in other states who are exempt from a sales tax or any corresponding burden. Another effect, or at least another tendency must be to avoid the likelihood of a drain upon the revenues of the state, buyers being no longer tempted to place their orders in other states in the effort to escape payment of the tax on local sales."

At page 582 it is said:
"The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end. * * * The privilege of use is only one attribute, among many, of the bundle of privileges that make up property or ownership. * * * A state is at liberty, if it pleases, to tax them all collectively, or to separate the faggots and lay the charge distributively. * * * Calling the tax an excise when it is laid solely upon the use does not make the power to impose it less, for anything the commerce clause has to say of its validity, than calling it a property tax and laying it on ownership."

While in the Henneford case the opinion in many of its paragraphs and the syllabus emphasizes that the Washington use tax was nondiscriminat- ory in its operation, it does not seem to us that it is an essential of a "use tax" that the state imposing the same allow any exemption or

credit for a tax paid in the state of purchase upon an article transported to and brought to rest in another state and there used. The emphasis upon the nondiscriminatory features of the Washington tax in the Henneford case, in our opinion was in the nature of an a foritori argument. Especially is this true in view of the court's statement at page 587:

"Yet a word of caution should be added here to avoid the chance of misconception. We have not meant to imply by anything said in this opinion that allowance of a credit for other taxes paid to Washington made it mandatory that there should be a like allowance for taxes paid to other states. A state, for many purposes, is to be reckoned as a self-contained unit, which may frame its own system of burdens and exemptions without heeding systems elsewhere. If there are limits to that power, there is no need to mark them now. It will be time enough to mark them when a taxpayer paying in the state of origin is compelled to pay again in the state of destination. This statute by its framework avoids that possibility. The offsetting allowance has been conceded, whether the concession was necessary or not, and thus the system has been divested of any semblance of inequality or prejudice. A taxing act is not invalid because its exemptions are more generous than the state would have been free to make them by exerting the full measure of her power."

In the case under consideration Honaker offered no evidence. The record is silent as to whether any tax was paid in Indiana, the state where the purchase was made, but even if the record expressly showed the payment of a tax in Indiana herein, equal to or greater than the Ohio retail sales tax, this court is of opinion that such fact would not affect the constitutionality of the Ohio "use tax." As a matter of actual knowledge (but of which we cannot take judicial notice) an examination of the Indiana statutes reveals that there was no sales tax in Indiana. Under the statutes of that state the seller paid a tax on his gross sales but no tax was imposed on the purchaser.

From all of the foregoing it follows that in the opinion of the court the judgment of the Justice of the Peace imposing a fine for failure to pay the tax imposed by the Ohio Tax Commission on account of refusal to pay the use tax should be affirmed.