483 A.2d 47

**AMERICAN TRUCKING ASSOCIATIONS, INC. et al.**

v.

**Louis L. GOLDSTEIN et al.**

**No. 108, Sept. Term, 1983.**

Court of Appeals of Maryland.

Nov. 1, 1984.

George Beall, Baltimore (Ronald U. Shaw and Miles & Stockbridge, Baltimore, on brief), for appellants.

Robert R. Smith, Asst. Atty. Gen., Glen Burnie (Stephen H. Sachs, Atty. Gen., Susan K. Gauvey and Robert B. Harrison, III, Asst. Attys. Gen., Baltimore, and Gerald Langbaum, Asst. Atty. Gen., Annapolis, on brief), for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, DAVIDSON,* RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ELDRIDGE, Judge.

The principal issue in this case is whether Maryland Code (1957, 1980 Repl.Vol., 1983 Cum.Supp.), Art. 81, § 423(a), which imposes an annual twenty-five dollar registration or "marker" fee upon all motor carriers that operate in Maryland, violates the Commerce Clause of the United States Constitution, Art. I, § 8, cl. 3.

Section 423(a) is part of Maryland's "Road Tax on Motor Carriers" Act, Art. 81, §§ 412–430, which requires that every commercial motor vehicle [1] operated by a motor carrier [2] in Maryland pay certain road taxes and fees to support Maryland's transportation system. Under § 423(a), all motor carriers must annually register their commercial motor vehicles with the State Comptroller for fuel tax reporting

---

* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but because of illness did not take part in the adoption of the opinion.

1. "Commercial motor vehicle" is defined in § 412(b) of the Act as "a passenger vehicle that has seats for more than 14 passengers in addition to the driver and for the operation of which a permit is required by the Public Service Commission, or any road tractor, or any truck-tractor or any truck having more than two axles, or any truck towing for a commercial purpose, a freight trailer or semi-trailer as defined under § 13–927(c) of the Transportation Article; which commercial motor vehicle is propelled by motor fuel."

2. "Motor carrier" is defined in § 412(c) as "any person who operates or causes to be operated any commercial motor vehicle on any highway in this State."

purposes and obtain an identification marker for each vehicle so registered. The annual charge imposed for issuance of this marker is twenty-five dollars per vehicle, regardless of whether the vehicle is titled in Maryland or elsewhere.[3]

The plaintiffs, a national organization of motor carriers as well as individual carriers subject to the registration fee under Art. 81, § 423(a), filed suit in the Circuit Court for Anne Arundel County challenging the constitutionality of the twenty-five dollar fee required by § 423(a). They sought declaratory and injunctive relief, claiming that the fee violated the Commerce Clause, the Equal Protection Clause, the Privileges and Immunities Clause of Art. IV, and the Supremacy Clause of the United States Constitution. The circuit court, rejecting all of these arguments, rendered a judgment declaring that Art. 81, § 423(a), is constitutional.

The plaintiffs appealed, and we granted their petition for a writ of certiorari prior to any proceedings in the Court of Special Appeals. In this Court, the plaintiffs attack Art. 81, § 423(a), on the same federal constitutional grounds raised below, although their primary reliance is upon the Commerce Clause. We shall affirm.[4]

---

**3.** Art. 81, § 423(a), states as follows:
"§ 423. Registration.
    (a) *Required; identification marker; fee.*—All motor carriers shall register each of their vehicles with the Comptroller on an annual basis for the period beginning January 1 of each year and expiring December 31 of each year. The Comptroller shall issue an identification marker for each motor vehicle registered by a motor carrier. The identification marker shall be displayed in accordance with regulations promulgated by the Comptroller. The identification marker shall remain the property of the State of Maryland and may be recalled for any violation of the provisions of this subtitle or of the regulations promulgated thereunder. The fee for the issuance of an identification marker is $25.00 per vehicle."

**4.** In addition to their arguments based on the Commerce Clause, Equal Protection Clause, Privileges and Immunities Clause, and Supremacy Clause, the plaintiffs in the trial court and in their brief in this Court argued that the twenty-five dollar marker or registration fee prescribed by Art. 81, § 423(a), is a "regulatory" measure rather than a "revenue" measure. They contended that "the revenue produced by this regulatory measure does not bear a reasonable and definite

## I. *Commerce Clause*

Before dealing with the relevant cases involving the Commerce Clause, and the plaintiffs' specific argument under that clause, it would be useful to review the statutory background in connection with the twenty-five dollar registration fee prescribed by Art. 81, § 423(a).

### A.

As previously indicated, the registration fee required by § 423(a) is part of the "Road Tax on Motor Carriers" subtitle of Art. 81. The road use tax, provided for in Art. 81, § 413, taxes each motor carrier based on the amount of fuel purchased outside of Maryland but consumed in operations on Maryland highways. The rate of the road use tax is the same as the motor fuel tax, Art. 56, § 136, which is imposed on every gallon of motor fuel sold in the State. These taxes, along with other taxes and fees in connection with transportation facilities, generate revenues that are statutorily dedicated to the Maryland Transportation Trust Fund and used to build and maintain Maryland's highways and other transportation facilities. *See* Code (1977, 1984 Cum.Supp.), § 3–216 of the Transportation Article; Code (1957, 1983 Repl.Vol.), Art. 56, § 137; Code (1957, 1980 Repl.Vol., 1983 Cum.Supp.), Art. 81, § 412 A.

The "Road Tax on Motor Carriers" Act, containing the annual registration fee, was first enacted in 1957. Ch. 842 of the Acts of 1957. At that time, each motor carrier operating within Maryland was required to register its motor vehicles with the Comptroller for one dollar per vehicle, which registration was effective for the life of the vehicle. A metal tag was affixed to each vehicle indicating compliance with the Act.

---

relation to the purpose of the registration requirements of Section 423" and that, therefore, "the fee is void under Maryland law." (Petitioners' brief, p. 22.) At oral argument before this Court, however, the plaintiffs abandoned this argument and conceded that the marker fee was a "revenue" measure. Consequently, we shall not consider this matter.

In 1959 the General Assembly amended the registration provision of the Act. Ch. 495 of the Acts of 1959. The registration fee for each vehicle became due on an annual basis. In addition, the metal tag signifying compliance with the Act was replaced by an identification marker to be placed visibly on the vehicle, along with a registration card to be kept in the cab.

The registration provision was further amended in 1963 and again in 1967. Annual registration fees remained at one dollar per vehicle, but fleet registration was instituted, whereby a carrier could register all of its vehicles for five dollars per year. Trip permits were also provided, allowing carriers who travelled sporadically in Maryland to receive temporary registration, in lieu of marker and road use taxes.[5] Ch. 541 of the Acts of 1963; Ch. 539 of the Acts of 1967.

In 1981 § 423 was again amended to delete fleet registration, to impose an annual registration fee of three dollars per vehicle, and to change the beginning of the annual registration period from April 1 to January 1. Any motor carrier operating a vehicle whose registration was scheduled to expire on March 31, 1982, could extend the registration to December 31, 1982, by paying $2.25 per vehicle. Ch. 783 of the Acts of 1981.

Following the 1981 legislative session, Maryland's transportation system faced a financial crisis caused by increasing maintenance and capital costs of its highway system during a period of high inflation, which costs were not being met by the State's motor vehicle fuel tax revenue. The General Assembly, aware of the shortage of road rehabilitation funds and desiring to generate increased revenues, authorized a highway cost allocation study. The

---

5. Prior to the 1967 enactment, motor carriers were permitted to operate within the State for a specified number of days upon receiving written authorization from the Comptroller, if enforcement of the registration fee requirement for that period would cause undue delay and hardship in the operation of their vehicles. Ch. 495 of the Acts of 1959; Ch. 842 of the Acts of 1957.

study examined state expenditures on the Maryland highway system, and usage of the highway system by various classes of vehicles, to determine which expenditures were attributable to which classes of vehicles and whether these various classes of vehicles, through their user tax payments, paid their fair share of highway expenditures. Utilizing two accepted cost allocation methodologies, the study disclosed that by either methodology there was a significant underpayment by the heavy truck and tractor-trailer class in tax responsibility for the costs of highway construction and maintenance.

In response to this study, the Legislature passed and the Governor signed Senate Bill 413 (Ch. 238 of the Acts of 1982), which imposed an increase in the motor vehicle fuel tax, an increase in the trip permit fee, and an increase in the annual registration fee from three dollars to twenty-five dollars per vehicle. The amendment also mandated that the increases in these taxes, while credited to the Transportation Trust Fund, were to be treated as highway user revenues and specifically earmarked for maintenance and repair of the State's highways and bridges. *See* Ch. 238 of the Acts of 1982, and Code (1977, 1984 Cum.Supp.), § 3–216(d)(3) of the Transportation Article.

The plaintiffs' argument in this case is that the 1982 increase in the annual registration fee, from three dollars to twenty-five dollars, "discriminates against and constitutes a burden on interstate commerce" (petitioners' brief, p. 30).

### B.

The Supreme Court has dealt with Commerce Clause challenges to state highway user flat fees on several occasions since 1935. In reviewing the validity of a flat fee, the Court has examined whether the fee was excessive in relation to the services provided by the State and whether it discriminated between intrastate and interstate commerce. In determining whether a flat highway user tax was exces-

sive, the Court has considered its amount and whether it was used for highway purposes.

The first of the "flat fee" cases was *Aero Mayflower Transit Co. v. Georgia Public Service Commission*, 295 U.S. 285, 55 S.Ct. 709, 79 L.Ed. 1439 (1935), which upheld a state statute that imposed an annual registration fee of twenty-five dollars per vehicle on all motor carriers operating on any highway in Georgia. The taxes collected were statutorily dedicated to the maintenance and repair of the state highways. The plaintiff, a private interstate motor carrier, challenged the state tax on the ground that it unlawfully burdened interstate commerce by, *inter alia,* imposing the same fee on interstate carriers as on local carriers, when interstate carriers used the roads less often. The Supreme Court rejected this argument, holding as follows (295 U.S. at 289, 55 S.Ct. at 711):

"The statute in imposing an annual license fee for the maintenance of the highways does not lay an unlawful burden on interstate commerce.

"The fee is moderate in amount; it goes into a fund for the upkeep of highways which carriers must use in the doing of their business; it is exacted without hostility to foreign or interstate transactions, being imposed also upon domestic vehicles operated in like conditions.

"Its validity in this aspect is attested by decisions so precisely applicable alike in facts and in principle as to apply a closure to debate ....

"The appellant urges the objection that its use of roads in Georgia is less than that by other carriers engaged in local business, yet they pay the same charge. The fee is not for the mileage covered by a vehicle. There would be administrative difficulties in collecting on that basis. The fee is for the privilege of a use as extensive as the carrier wills that it shall be. There is nothing unreasonable or oppressive in a burden so imposed .... One who receives a privilege without limit is not wronged by his own refusal to enjoy it as freely as he may."

The decision in *Aero Mayflower* was followed in the subsequent flat fee cases. *Morf v. Bingaman*, 298 U.S. 407, 56 S.Ct. 756, 80 L.Ed. 1245 (1936); *Ingels v. Morf*, 300 U.S. 290, 57 S.Ct. 439, 81 L.Ed. 653 (1937); *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); *Aero Transit Co. v. Comm'rs.*, 332 U.S. 495, 68 S.Ct. 167, 92 L.Ed. 99 (1947); *Capitol Greyhound Lines v. Brice*, 339 U.S. 542, 70 S.Ct. 806, 94 L.Ed. 1053 (1950). Flat fees ranging from five dollars to twenty-five dollars were found to be proper.[6]

Moreover two different flat taxes "laid 'in consideration of the use of the highways,' " totaling twenty-five dollars per year and imposed along with gasoline and other road taxes, were upheld in *Aero Transit Co. v. Comm'rs.*, *supra*, 332 U.S. at 497, 68 S.Ct. at 168. The Supreme Court in that case first held that the two flat taxes did not discriminate against interstate commerce, saying (*id.* at 501–502, 68 S.Ct. at 170–171):

"Each applies alike to local and interstate operations. Neither undertakes to tax traffic or movements taking place outside of Montana or the gross returns from such movements or to use such returns as a measure of the amount of the tax. Both levies apply exclusively to operations wholly within the state or the proceeds of such operations, although those operations are interstate in character."

The Court continued, addressing whether the presence of other road taxes in the revenue scheme would affect the validity of the flat highway user taxes (*id.* at 502–503, 68 S.Ct. at 171):

"Moreover, it is not material to the validity of either tax that the state also imposes and collects the vehicle registration and license fee and the gallonage tax on gasoline purchased in Montana. The validity of those taxes neither is questioned nor well could be.... Nor does their

---

**6.** In only one of these cases did the Court invalidate a tax. *Ingels v. Morf, supra,* 300 U.S. at 295–296, 57 S.Ct. at 442.

exaction have any significant relationship to the imposition of the taxes now in question . . . .

"It is far too late to question that a state, consistently with the commerce clause, may lay upon motor vehicles engaged exclusively in interstate commerce, or upon those who own and so operate them, a fair and reasonable nondiscriminatory tax as compensation for the use of its highways."

A state highway flat tax was most recently challenged in *Capitol Greyhound Lines v. Brice*, 339 U.S. 542, 70 S.Ct. 806, 94 L.Ed. 1053 (1950). There the Court upheld a Maryland tax of two percent of the fair market value of specified motor vehicles, as a condition of operating such vehicles in Maryland. This tax also was imposed in conjunction with titling, gasoline and mileage taxes. The plaintiffs in *Capitol Greyhound*, however, challenged the taxing formula instead of the amount. Relying on the prior flat tax cases, the Supreme Court held that the formula used in reaching the tax was not crucial. Instead, the Court stated that the relevant inquiry was whether the amount of the tax was excessive (339 U.S. at 544–545, 70 S.Ct. at 808):

"The taxes upheld have taken many forms. Examples are taxes based on mileage, chassis weight, tonnage-capacity, or horsepower, singly or in combination—a list which does not begin to exhaust the innumerable factors bearing on the fairness of compensation by each carrier to a state. The difficulty in gearing taxes to these factors was recognized by this Court as early as *Kane v. New Jersey*, 242 U.S. 160, 168 [37 S.Ct. 30, 32, 61 L.Ed. 222 (1916) ], where it said that so long as fees are reasonable in amount 'it is clearly within the discretion of the State to determine whether the compensation for the use of its highways by automobiles shall be determined by way of a fee, payable annually or semi-annually, or by a toll based on mileage or otherwise.' Later, in rejecting contentions that the validity of taxes must be determined by formula rather than result, the Court held that a flat fee on the privilege of using state highways 'is not a

forbidden burden on interstate commerce' unless 'unreasonable in amount.' *Morf v. Bingaman,* 298 U.S. 407, 412 [56 S.Ct. 756, 758, 80 L.Ed. 1245]. See also *Aero Transit Co. v. Comm'rs,* 332 U.S. 495 [68 S.Ct. 167, 92 L.Ed. 99], and annotation thereto, 92 L.Ed. 109, 119–120. Yet clearly a flat fee is not geared to mileage, weight or any other factor relevant in considering the fairness of compensation for road use. Thus, unless we are to depart from prior decisions, the Maryland tax based on the cost of the vehicles should be judged by its result, not its formula, and must stand unless proven to be unreasonable in amount for the privilege granted."

Although no flat highway user taxes have been challenged in recent years, the Supreme Court reaffirmed the above-discussed cases in *Evansville-Vanderburgh Airport Authority District v. Delta Airlines,* 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972). There the plaintiff airlines challenged a flat "head tax" of one dollar per commercial airline passenger enplaning from certain airports in Evansville, Indiana. The airlines were required to collect and remit the tax, which was dedicated to a fund used to defray costs of improving and maintaining the airports. The airlines challenged the flat tax as violative of the Commerce Clause. The Supreme Court held that the tax did not unreasonably burden interstate commerce, stating (405 U.S. at 715, 92 S.Ct. at 1354–55):

"Our decisions concerning highway tolls are instructive. They establish that the States are empowered to develop 'uniform, fair and practical' standards for this type of fee....

"We have also held that a State may impose a flat fee for the privilege of using its roads, without regard to the actual use by particular vehicles, so long as the fee is not excessive. *Aero Mayflower Transit Co. v. Georgia Public Service Comm'n,* 295 U.S. 285 [55 S.Ct. 709, 79 L.Ed. 1439] (1935); *Morf v. Bingaman,* 298 U.S. 407 [56 S.Ct. 756, 80 L.Ed. 1245] (1936); *Aero Mayflower Transit Co.*

*v. Board of Railroad Comm'rs*, 332 U.S. 495 [68 S.Ct. 167, 92 L.Ed. 99] (1947)."

## C.

While conceding that the above-discussed flat fee cases are inconsistent with their position in the present case, the plaintiffs urge that *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), and one of its progeny, *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981), effectively overruled the flat fee cases.

*Complete Auto* involved a sales tax levied by Mississippi against all forms of interstate carriers for the privilege of doing business within that state. It was assessed according to the volume of sales or gross income earned within Mississippi. In upholding the validity of the state tax, the Court expressly overruled *Spector Motor Service v. O'Connor*, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951). *Spector* had held that any tax on the privilege of doing business within a state was *per se* unconstitutional. The Court in *Complete Auto* recognized that decisions subsequent to *Spector* had used circuitous reasoning to evade its mandate, and that the *Spector* rule had "come to operate only as a rule of draftsmanship." 430 U.S. at 285, 97 S.Ct. at 1082. Finding the *Spector* holding unsatisfactory, the Court abandoned it. The Court in *Complete Auto* further indicated that the validity under the Commerce Clause of such a state tax should depend upon its practical effect. The Supreme Court's *Complete Auto* opinion in several places mentioned four considerations in determining the practical effect of such a tax (*id.* at 277–278, 279, 287, 97 S.Ct. at 1078, 1079, 1083). They are:

1. Whether the activity being taxed has a sufficient nexus with the taxing state;
2. Whether the tax is fairly apportioned;
3. Whether the tax discriminates against interstate commerce;

4. Whether the tax is fairly related to services provided by the state.

In *Commonwealth Edison Co. v. Montana, supra,* 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884, Montana had levied a severance tax against coal mined in the state, with the tax proceeds going into the state's general revenue. The Supreme Court held

"that the Montana tax must be evaluated under *Complete Auto Transit*'s four-part test. Under that test, a state tax does not offend the Commerce Clause if it 'is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to services provided by the State.' 430 U.S., at 279 [97 S.Ct. at 1079]." 453 U.S. at 617, 101 S.Ct. at 2953.

The Supreme Court in *Commonwealth Edison,* in applying the fourth prong of the *Complete Auto* test to the tax then before it, stated that the "tax must be reasonably related to the extent of the [taxpayer's] contact" with the taxing state. *Id.* 453 U.S. at 626, 101 S.Ct. at 2958.

In arguing that *Complete Auto* and *Commonwealth Edison* overruled the flat highway user tax cases, the plaintiffs rely heavily upon the above-quoted statement from *Commonwealth Edison.* The plaintiffs contend that a flat tax can never be "related to the extent of" the taxpayer's contact with the taxing state.

In our view, *Complete Auto* and *Commonwealth Edison* did not undercut the previously discussed flat highway user tax cases. In neither opinion did the Supreme Court indicate any disapproval of those cases; rather, only the *Spector* case was overruled. Moreover, two of the flat fee cases, *Ingels v. Morf, supra,* 300 U.S. 290, 57 S.Ct. 439, 81 L.Ed. 653, and *Clark v. Paul Gray, Inc., supra,* 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001, were utilized by the Court in *Complete Auto* in formulating the four-part test. 430 U.S. at 278 n. 6, 97 S.Ct. at 1078 n. 6. In addition, in

*Commonwealth Edison,* the Court specifically "put to one side" as irrelevant in reviewing a general revenue statute "those cases in which the Court reviewed challenges to 'user' fees or 'taxes' that were designed and defended as a specific charge imposed by the State for the use of state-owned or state-provided transportation or other facilities and services. See, *e.g., Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc.,* 405 U.S. 707 [92 S.Ct. 1349, 31 L.Ed.2d 620] (1972); *Clark v. Paul Gray, Inc.,* 306 U.S. 583 [59 S.Ct. 744, 83 L.Ed. 1001] (1939); *Ingels v. Morf,* 300 U.S. 290 [57 S.Ct. 439, 81 L.Ed. 653] (1937)." 453 U.S. at 621–622, 101 S.Ct. at 2955–2956.

The dissent in *Commonwealth Edison* also recognized that the line of highway flat fee cases had no bearing on the general revenue tax there at issue. *Id.* at 647 n. 13, 101 S.Ct. at 2969 n. 13.

### D.

■ We believe that the twenty-five dollar annual registration fee imposed by Art. 81, § 423(a), is clearly valid under the Commerce Clause in light of the pertinent considerations set forth in the Supreme Court's opinions.

There is unquestionably a substantial nexus between the annual fee and the State of Maryland. The interstate movement of commercial vehicles on Maryland's highways and bridges affords an adequate basis for the imposition of state highway user taxes necessary to support the State's highway system. *See Capitol Greyhound Lines v. Brice, supra,* 339 U.S. 542, 70 S.Ct. 806, 94 L.Ed. 1053; *Clark v. Paul Gray, Inc., supra,* 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001; *Aero Mayflower Transit Co. v. Georgia Public Service Commission, supra,* 295 U.S. 285, 55 S.Ct. 709, 79 L.Ed. 1439.

Moreover, the registration fee under § 423(a) does not discriminate against interstate commerce. It is not aimed at placing interstate business at a competitive disadvantage with local businesses by imposing greater burdens on the

interstate activities. *See Maryland v. Louisiana*, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). The registration fee applies equally to motor carriers registered in state and out of state, and those engaged in intrastate as well as interstate commerce. The purpose of § 423(a) is not to protect local carriers against foreign competition; the purpose is to spread evenly among all commercial users the tax burden of supporting Maryland's highway system.

The plaintiffs argue that the practical effect of § 423(a) is to discriminate against out of state carriers. *See Nippert v. City of Richmond*, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760 (1946). In support of this argument, the plaintiffs rely upon the results of an unvalidated informal survey of approximately 79,000 of the 401,000 vehicles that pay the Maryland registration fee. This survey showed that the per-mile cost of the registration fee was significantly higher for out of state carriers than for Maryland carriers. The State, however, presented the testimony of one of the authors of the General Assembly's highway cost allocation study. Using the results of that study, he showed that, after the 1982 amendments to the Motor Carriers Act, local carriers had a total highway user tax cost of .074 cents per mile, whereas the out of state carriers' total user tax cost was .038 cents per mile. Furthermore, an argument identical to that of the plaintiffs, namely that the registration tax is invalid because out of state carriers use the roads less often than local carriers, was expressly rejected in *Aero Mayflower Transit Co. v. Georgia Public Service Commission, supra*, 295 U.S. at 289, 55 S.Ct. at 710.

Finally, the annual twenty-five dollar registration fee is not excessive. A registration tax of twenty-five dollars per year was found to be moderate in 1935; it can hardly be argued that that amount is excessive today. *Aero Mayflower Transit Co. v. Georgia Public Service Commission, supra*. As previously discussed, the revenues generated from § 423(a) are statutorily dedicated to Maryland's Transportation Trust Fund. The 1982 increase from three to

twenty-five dollars is specifically earmarked for the repair and rebuilding of the State's highway system.

For these reasons, we reject the plaintiffs' Commerce Clause challenge to Art. 81, § 423(a).

## II. *Privileges and Immunities Clause*

■ The plaintiffs also assert that § 423(a) violates the Privileges and Immunities Clause of Art. IV of the United States Constitution.[7] It is well established that the Privileges and Immunities Clause is inapplicable to corporations. By its terms, it applies only to "citizens," and corporations are not citizens within the meaning of the clause. *Western & Southern L.I. Co. v. Bd. of Equalization*, 451 U.S. 648, 656, 101 S.Ct. 2070, 2076, 68 L.Ed.2d 514 (1981); *Hemphill v. Orloff*, 277 U.S. 537, 48 S.Ct. 577, 72 L.Ed. 978 (1928).

All of the named plaintiffs are corporations. As such, they have no standing to challenge § 423(a) under the Privileges and Immunities Clause of Art. IV.

## III. *Equal Protection Clause*

■ The plaintiffs next challenge Art. 81, § 423(a), under the Equal Protection Clause of the Fourteenth Amendment. They argue that, because "non-Maryland based interstate motor carriers [allegedly] shoulder a vastly disproportionate share of this financial burden, ... the registration fee creates a wholly unreasonable and impermissible classification based on *in-state* versus *out-of-state* carriers." (Petitioners' brief, pp. 36–38.) The plaintiffs' equal protection argument, therefore, is the same as their argument that § 423(a) discriminates against interstate commerce. For the reasons previously set forth, we hold that the statute does not discriminate against out of state carriers.[8]

---

7. "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const., Art. IV, § 2, cl. 1.

8. The only classification made by Art. 81, § 423(a), is between commercial motor carriers and non-commercial vehicles. Such distinction clearly has a rational basis. As previously mentioned, a commis-

## IV. *Supremacy Clause*

■ The plaintiffs' final argument is that an Interstate Commerce Commission regulation prohibits a state registration tax exceeding ten dollars per year.

The regulation upon which plaintiffs rely, 49 C.F.R. § 1023.13, concerns state requirements for registration of I.C.C. operating permits. It provides:

"The application for the registration of such operating authority shall be filed in duplicate with the Commission of such State. The original, to which the copy of the I.C.C. operating authority shall be attached, shall be retained by the State Commission .... The application shall be accompanied by the fee, if any, prescribed by the law of such State: *Provided, however,* That such fee shall not exceed $25 for an application filed by a motor carrier who has not previously filed a currently effective application for registration of I.C.C. operating authority with the Commission of such State: *And provided further,* That such fee shall not exceed $10 for an application filed by a motor carrier who has previously filed a currently effective application for the registration of I.C.C. operating authority with such Commission." [32 FR 20016, Dec. 20, 1967, as amended at 35 FR 2524, Feb. 4, 1970] (Emphasis in original.)

This regulation relates solely to state statutes that require interstate carriers to register their I.C.C. operating permits in order to conduct operations within the state. 49 C.F.R. § 1023.11 (1983). Maryland has no such requirement, and the above-quoted regulation has no application to Maryland. Art. 81, § 423(a), has nothing to do with the filing of a current record of I.C.C. operating authority or an I.C.C. permit.

Furthermore, other provisions expressly exempt state highway user taxes from 49 C.F.R. § 1023.13. 49 U.S.C.

---

sioned study revealed that commercial trucks contributed the most to the wear and tear of the highways, yet contributed the least to their upkeep.

§ 10521(b)(4) states that the federal motor carrier subtitle does not "affect the taxation power of a state over a motor carrier." [9] The exception also appears at 49 C.F.R. § 1023.-42, which provides that "[n]othing in these standard shall be construed to affect State requirements as to the external identification of vehicles to indicate the payment of a State tax or fee imposed for revenue purposes ...."

Consequently, the Interstate Commerce Commission regulations do not preempt Art. 81, § 423(a).

JUDGMENT AFFIRMED.

PETITIONERS TO PAY COSTS.

---

**9.** There are two statutory exceptions to this provision, neither of which is relevant to this discussion. 49 U.S.C. §§ 11503 a, 11504(b). The legislative history behind the first of these exceptions sheds light on § 10521(b)(4), as follows:

"The provisions of this section do not apply to that body of taxes known as highway user taxes that are levied on owners or operators of motor vehicles because of their use of public highways. These highway user taxes include, but are not limited to, motor fuel taxes, registration fees, driver licenses, vehicle user taxes, ton-mile taxes, and other motor vehicle related taxes; the proceeds of these taxes, for the most part, are expended through a State highway fund or otherwise earmarked for highway construction, maintenance, or operation."

H.R.Rep. No. 96–1069, 96th Cong., 2d Sess., p. 45, U.S.Code Cong. & Admin.News 1980, p. 2283, 2327.